IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, et al.,

Plaintiffs,

vs.

OFFICE OF BUDGET MANAGEMENT, et al.,

Defendants.

Civil Case No. 8:25-cv-04164-PX

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE PAULA XINIS
UNITED STATES DISTRICT COURT JUDGE
WEDNESDAY, JUNE 17, 2026, AT 10:07 A.M.

APPEARANCES:

On Behalf of the Plaintiffs:

BY: KALI SCHELLENBERG, ESQUIRE
STEVEN Y. BRESSLER, ESQUIRE
AMY VICKERY, ESQUIRE
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202)448-9090

BY: CHRISTINA WENTWORTH, ESQUIRE
Citizens for Ethics
P.O. Box 14596
Washington, DC 20044
(585)944-2689

(Continued)

***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***

On Behalf of the Defendants:

BY: EITAN R. SIRKOVICH, ESQUIRE
U.S. Department of Justice, Civil Division
1100 L Street NW
Washington, DC 20005
(202)353-5525

ALSO PRESENT: Christopher Hall, Esquire, DOJ

P R O C E E D I N G S

(Court called to order.)

**DEPUTY CLERK:** All rise. The United States District Court for the District of Maryland is now in session. The Honorable Paula Xinis presiding.

**THE COURT:** Good morning, everyone. You all can have a seat.

Mr. Ulander?

**DEPUTY CLERK:** The matter now pending before the Court is Civil Action Number PX25-4164, Public Employees for Environmental Responsibility, et al., versus Office of Management and Budget, et al. The matter comes before this Court for a motions hearing.

Counsel, please identify yourselves for the record.

**MS. SCHELLENBERG:** Kali Schellenberg on behalf of plaintiffs.

**MR. BRESSLER:** Steven Bressler for plaintiffs.

**MS. WENTWORTH:** Christina Wentworth for plaintiffs.

**MS. VICKERY:** Amy Vickery for plaintiffs.

**MR. SIRKOVICH:** Eitan Sirkovich for defendants, and I'm joined here by Christopher Hall.

**THE COURT:** Okay. Thank you all. Just give me a moment. I'm trying to log into my computer, which is always fun. It's like I work for the computer, the computer does not work for me. Just give me a sec.

Okay, counsel. So I've had the opportunity to read everything that you've submitted and thought long and hard about the case, and let me just preview for you where I'm living.

And I'm going to start with the plaintiffs.

I think that the case currently, to stay in my court, you will need to convince me that PEER has standing. And I'm skeptical. And so the way that I'm reading the law is that if PEER does not have standing, because PEER is the only plaintiff that resides in Maryland, then the choice is going to be dismissal without prejudice for lack of jurisdiction or transfer.

So what I would like to focus on today -- and that's not to the exclusion of other arguments, because in the event you persuade me otherwise, and I say I'm not going to rule today, then I'll be reaching the other issues, so I certainly want your views on it.

But -- but I am concerned and would really like the plaintiff to address that. But also to address, in the event that I find there's no standing, what do you prefer in terms of transfer or dismissal? Because those are the two options that 1404 allows me to consider -- or 1406, I suppose.

Anyway, so that's where I am.

Who is going to be arguing for the plaintiff?

**MS. SCHELLENBERG:** I am, Your Honor.

**THE COURT:** Okay. Very well. Whenever you're ready. And you can stay at your seat, stand at the podium, whatever is most comfortable for you.

**MS. SCHELLENBERG:** Thank you, Your Honor.

In order to better address your concern, may I ask, is there concern with PEER's standing related to the subsequent apportionments, or is it related to just the injury that they, in fact --

**THE COURT:** Yeah, so it's not about -- so my view on the mootness question, which is different than Article III standing, at least I'm separating the two, is that assume for the purpose of our argument, it's not moot, because this is a government action, and a government action that is capable of repetition, at least according to the complaint, in the light most favorable to you. And if the government really wants to moot that issue, the government can submit a declaration to that effect, that this policy, as you've framed it, is not a policy that's dead on arrival or not -- we're not engaging in any sort of programmatic review, we don't intend to, and we intend to follow the law in apportion according to -- in a manner that doesn't violate the statute that enabled CIGIE, that created CIGIE. That's where I'm living, so this is really about an Article III standing.

**MS. SCHELLENBERG:** Okay. Thank you, Your Honor.

To address Article III standing, we have alleged --

there's two theories of standing which Your Honor could find that PEER has standing under. The first is related to the imminent harm that PEER would face if CIGIE is defunded again. And the second is related to the injuries that PEER and the rest of the plaintiffs -- PEER and GAP are facing due to the implementation of the funding policy.

**THE COURT:** Let's break it down even more simply.

You're proceeding on a theory of organizational standing, right?

**MS. SCHELLENBERG:** Yes.

**THE COURT:** And so that means that you have to demonstrate that the challenged policy would perceptibly impair PEER's mission, right?

**MS. SCHELLENBERG:** Yes, yes.

**THE COURT:** Okay. And the way I'm thinking about it is whether it's like, again, assume -- assume for the sake of argument that the OMB policy was still in place, what I'm going to call the OMB policy, and CIGIE's doors were shuttered right now.

**MS. SCHELLENBERG:** Uh-huh.

**THE COURT:** I'm having trouble getting to the three prongs of standing, under that hypothetical, for you, based on the complaint and what Mr. Whitehouse's affidavit has told me about what CIGIE does and how they do it.

**MS. SCHELLENBERG:** Okay.

**THE COURT:** So maybe you can walk me through it.

**MS. SCHELLENBERG:** Yes.

So talking about the injuries that PEER and the other plaintiffs face when CIGIE was defunded, so when CIGIE was fully defunded, the IC committee was not operating, their resources that CIGIE provides were not online. And when that happened, PEER and GAP, and POGO, all rely on those resources.

So in terms of PEER, what it does with -- to serve its mission of protecting employees who protect the environment, the things that it does are it works on behalf of whistleblowers, so it both files IG complaints on their behalf and it defends them. It also works within the IG system to collect information, to publicize that information.

And so when CIGIE was fully closed, PEER lost the IC as an avenue of redress. And once it was closed, it also lost all of these resources.

So when that happened, it had to divert resources in order to continue to fulfill its mission.

So with regard to the IC, because that was no longer available, it had to take more time to counsel its clients.

**THE COURT:** Here's the problem -- here's the problem that I'm having, though, is that when I'm looking for facts which support this position, the facts -- you've done two things which make this difficult. The first is -- and I think in fairness to you, you've been quite transparent about how the

last year has been very difficult for your organization and the whistleblowers whom you help.

But you -- you have articulated that there's been more than one problem, and one very big problem has been the administration's firing of all the IGs who have otherwise been installed in the agencies with whom you work most directly, all of them. And then the installation of IGs who are, again, in the light most favorable to you, as you've pled them, partisan and retaliatory.

So what I'm having trouble with is, in the ordinary course, just looking at the IG complaints that you have filed on behalf of your own organization, on PEER's behalf and on behalf of whistleblowers, you filed them with the IGs.

You have only filed one IC complaint 17 years ago, according to the footnote in your complaint.

How do I find in that scenario that the real injured -- the real wrongdoer here is not the defunding of CIGIE, but the administration's, as you put it, attack on the IG system -- on the IGs themselves?

**MS. SCHELLENBERG:** Right. Well, I think there's a couple of things going on.

So when we're talking about the attacks on the IG system, that's -- that -- part of that is informing why it is so important that CIGIE be operational, because CIGIE was set up to be a check on the IG system and to make sure it was

operating with integrity and properly and --

THE COURT: Sure.

MS. SCHELLENBERG: -- in that process.

THE COURT: But you don't have any direct interaction with CIGIE according to -- or very little, at least in terms of filing complaints. I mean, because -- because I think you anticipated it would be a judge's question, right? If the -- if the victim of OMB's policy is CIGIE, well, what kind of interaction do you directly have? And it seems like you've laid out two: One is filing complaints, the other is using the website.

MS. SCHELLENBERG: Right. And I will note in PEER's declaration, PEER believes that there are currently facts to support a complaint to the IC.

THE COURT: I know. But it -- like, you don't tell me what those facts are, and it's one complaint, and I have no independent assessment of the validity of that statement. And even if it is, it's one complaint.

I mean, you're an organization with 16 full-time employees, three fellows, a board of directors. Just out of interest in what PEER does, you can look at West Law and see, you know, how many other kinds of suits you've brought on behalf of, you know, protecting the environment: Directly at EPA, you file amici briefs.

So, again, to tell me that you're thinking about filing a

CIGIE complaint is not the kind of concrete injury -- again, given all the facts that you've pled, which is the administration's fired all the IGs. Like, if there's anything that cuts you off in terms of your ability to advance your mission, it seems like it's having no IGs in the agencies that you routinely try to hold accountable.

**MS. SCHELLENBERG:** That's certainly true. But the standard here is a perceptible impairment to the admission, right? And what PEER has alleged is a perceptible impairment to its admission for the two reasons talked about, one being the IC, it's not available as an avenue for redress so that they -- you know, certainly when it's closed, they have no option to file with the IC. They can do nothing to resolve any of the issues they are seeing with the IGs.

And then, secondly, when it's fully shut down, they also can't use any of those resources that they actually do use when they are counseling whistleblowers, even outside of the directly interacting with CIGIE, they use those resources when they are interacting with IGs, when they are filing with Congress.

**THE COURT:** There hasn't been a whole lot of facts pled on that second one. So, again, I'm looking for some concrete particularized injury, right? Just basically saying we look at these websites and we rely on them I don't think is enough.

And there's two websites, so I want to make sure I am careful with you so I understand what your position is.

With regard to the website that is used to file whistleblower complaints, right?

**MS. SCHELLENBERG:** Yes.

**THE COURT:** That's one website.

**MS. SCHELLENBERG:** Ignet, yep.

**THE COURT:** That's Ignet. Because I get them confused. Ignet.

And the other one is the clearinghouse for information; is that fair?

**MS. SCHELLENBERG:** Yes. The other one is Oversight.gov, which has a variety of information in it. And then within that, there's -- there's a FOIA clearinghouse, there's a whole other sorts of information provided.

**THE COURT:** Right. And in the -- the two repositories of evidence that I have for standing is the complaint and the Whitehouse affidavit; is that fair? There's nothing else that I see that gives me evidence of standing.

**MS. SCHELLENBERG:** That's fair.

One other thing I would -- if we're talking about -- so, again, if we're talking about two theories: One, full defunding, right? And they are losing that avenue completely. And I understand your point to be that they don't use it enough for that to be considered a harm to their mission, but I think

the point that we're trying to make is that in this environment, they would be seeking to use it more.

They haven't had to go to it because the IG system has been, in some ways, functioning previously. And so the purpose of CIGIE is that you can use it when you need it, right? And so they are losing that opportunity.

So that's -- that's one thing on the defunding.

But if we also think about it as the restricted funding policy, and the fact that what OMB is doing is inserting itself between CIGIE and its missions set out by Congress, which is to be independent, which is why Congress set up its funding in a particular way --

**THE COURT:** Right.

**MS. SCHELLENBERG:** -- and by OMB sort of sitting on top of it and dangling this sort of Damocles on top of it, PEER is also hurt in that regard --

**THE COURT:** Right.

**MS. SCHELLENBERG:** -- because they can't trust that anything they do try to bring in front of them is going to be independent.

**THE COURT:** And that's why I agree with you with respect to mootness, and I agree with you that the manner in which now it's been refunded, if you will, if it's been refunded, has been sort of these three-month chunks, which, you know, I see the point in terms of the change in the way that

CIGIE operates, right?

But your client is -- is like at least once removed. Like, you're not the association of an Inspector General saying, you know, "We want to sue OMB because our protector or our watchdog has now been perceptibly impaired and that has impaired our function." You're another layer removed, and the principal avenue by which you, in this context, help your clients, or the whistleblowers, the organization functions, is with the IG themselves.

And while I get that CIGIE provides a service, it is, in that respect, very nonspecific in the complaint, or very dated. What you do tell me about is 17 years ago, and it's one complaint. That's a long time ago.

**MS. SCHELLENBERG:** I understand that, Your Honor, but I think when you take into account the facts that we have alleged about the degradation in the IG environment, we've given a reason as to why this avenue redresses even more important right now, and that they would use it, that they have a reason to use it, but cannot because of OMB.

**THE COURT:** But you give me no facts. I mean, you really don't. And Mr. Whitehouse says, well, attorney-client relationships. But there's got to be some evidence, some facts. Even on the website -- let's talk about the clearinghouse website. I mean, something that gives me a sense of how you use it; rather, I just get sort of a conclusory, "we

use it, and now we can't."

**MS. SCHELLENBERG:** Right. Well, I think the information that's on those websites is a compendium of everything in the IG system. And as you already noted, PEER works heavily within that system, that's part of its mission. And so it uses that information and puts it into its complaints, it puts it into the resources it provides to the public, it puts it into -- where it's going to focus its investigations. All of that information is important information for PEER and the other plaintiffs to use.

**THE COURT:** And you may get there, but right now, it's -- it's a -- it's a very small portion of your averred injury, and it's quite nonspecific.

So -- so the -- and here is the -- here is the struggle that I had, too, which, again, you may be able to take another run at this if you really want to be in Maryland. I'm skeptical, but let's just put that -- put that -- instead of going to D.C., where you might have, you know, clients who have a more direct injury.

But even looking -- so this is how I'm thinking about it. PEER does a lot for the environmental community. A piece of that, and an important piece of it, is supporting whistleblowers and filing whistleblower complaints not only for other people but on behalf of PEER.

But, again, in your complaint, when you try to quantify

that for me, and all the things that you've done in five years, there have been four whistleblower complaints and 12 PEER complaints, and a thousand total hours.

That's just not a lot --

**MS. SCHELLENBERG:** Well, I would --

**THE COURT:** -- to begin with.

**MS. SCHELLENBERG:** That's -- that's, you know, filed, right, complaints, but there's a lot of things that they are doing, whether they are -- when they are working with our clients. But whether you file or not, how you think about that, what is the current state of play in the system, right? And so they are doing a lot of work that you wouldn't just see from how many have been filed.

**THE COURT:** Right.

**MS. SCHELLENBERG:** And one of their important parts of the work, right? That's complaints filed. The other thing they do, is they defend whistleblowers who are being subject to --

**THE COURT:** Yeah.

**MS. SCHELLENBERG:** -- attacks. So that's not quantified there, but that is also work that they do.

**THE COURT:** Okay. So with regard to that, again, how is -- how is it that CIGIE and OMB's -- again, I'm just going to say, assume for our purposes of our argument, OMB has shuttered CIGIE, cut them off at the knees.

How is that the source of the injury that's concrete and particularized when it seems like the real damage has been done by getting rid of the IGs in the first place?

**MS. SCHELLENBERG:** The -- that is damage, but there is also concrete and particularized injury from CIGIE, and I would go back to the loss of the IC as an avenue of redress and the effect that that has, the loss of those resources and the effect that that has. And also just the current state of affairs in terms of OMB's kind of, you know, again, dangling this sort of Damocles over them, and the effect that that's had on what PEER has to do --

**THE COURT:** Let me put it another real simple way.

**MS. SCHELLENBERG:** Yeah.

**THE COURT:** If you don't have IGs, then what's -- what's the point of CIGIE? In other words, CIGIE is the watchdog of the watchdog, and it is the support system to the watchdog, and it's the support system that principally is derivative of the IG.

So if you don't have an IG, which is its own problem, and which -- for which -- I'm not going to get into how you sue an administration for making that decision, if you even can, but that, to me, is like the ground zero of the injury, and everything else downstream with regard to CIGIE is somewhat speculative and certainly not likely to be redressed by keeping CIGIE open if the IGs have been decimated.

**MS. SCHELLENBERG:** Right. So if we're talking about redressability, the law provides that we just need to show it's one obstacle. And I believe that --

**THE COURT:** Well, no. Under the Fourth Circuit law, you have to show it's likely redressable. And that sort of -- and then I think under *Havens*, you got independent actors which are not the source of the alleged wrongdoing that are intervening, right, causing the injury, then it may not be likely redressable by giving you the relief you seek.

**MS. SCHELLENBERG:** The injury that we're talking about, we're alleging that it's caused by OMB. We're alleging that OMB's actions and what it has taken is the source of the injury, and so what we've asked for redress is to vacate that policy, vacate the idea -- sorry, vacate the decision they made that they can defund, restrict CIGIE's funding based on policy choices. And so that is redressable because that would directly address the issue that we're talking about.

**THE COURT:** Which is what? I mean, how is it redressable if the IGs aren't in power or if the IGs are partisan? How is it redressable in a way that I can say is not speculative or hypothetical?

**MS. SCHELLENBERG:** The injuries that we're alleging are based on what's happened at CIGIE, and so it would redress what's happened at CIGIE.

There are issues within the IG system, that's true, but

the -- Congress set up CIGIE for a purpose. It set it up to do this.

So we're not trying to attack how Congress has set up the IG system. What we're trying to say is what OMB is doing is -- is an unlawful incursion on that system and it affects --

**THE COURT:** I don't necessarily disagree with you. I'm just not sure that you're the party that has enough skin in the game in that regard.

Like, I think we can disaggregate the injury that you're alleging, and I'm accepting that as true and in the light most favorable to you, but trying to figure out how remedying that injury would redress your claim, the only direct -- and I go back to this, because the only direct involvement that you have with CIGIE is 17 years ago, a complaint filed. At least as it's pled now. You may be able to, you know, rethink this.

But at least as it's pled now on the using CIGIE to file complaints, you've got a complaint from 17 years ago, a letter filed with CIGIE 15 years ago. That's at Footnote 63. Then you've got a somewhat amorphous "we're thinking about filing a complaint with CIGIE," got that. And then you've got a relatively nonspecific "we use the resources."

Maybe you can get there, but it's a hard lift right now, given the way that the complaint has been pled, for me to say that you're perceptibly -- PEER is perceptibly impaired, and telling OMB they can't do this again will fix PEER's problem.

**MS. SCHELLENBERG:** I understand your concern there, Your Honor.

Again, I would go back to the fact that CIGIE is a tool in -- is a tool in a toolbox for all of these organizations. They have not had to turn to that tool frequently because the IG system has functioned previously.

And, again, what we're seeing now is that situation has changed.

And what they stated is that they very much would file an IC complaint if that was still really a viable avenue of redress.

**THE COURT:** Well, have you done it in the last year? I mean, CIGIE has been funded since January. I know it's been in increments of three-month stretches, but this -- you know, as it's been presented to me, is you've been thinking about it, but you have a funded CIGIE, it's not perfect. Have you -- have you done it?

**MS. SCHELLENBERG:** Yeah. So two responses to that.

One, CIGIE was closed -- was shuttered for 48 days, so there was no opportunity to --

**THE COURT:** Right, that was seven months ago. I'm asking about since it was funded.

**MS. SCHELLENBERG:** And since, right? Then we're getting into the theory that we've talked about, because of OMB's incursion on its independence, it no longer thinks that

that's a viable avenue of redress.

And I would point to the *AFL-CIO v. Department of Labor* case. That is where the organizations there --

**THE COURT:** Right. Yeah.

**MS. SCHELLENBERG:** -- could not go to the CFPB to file the complaints.

**THE COURT:** Right. But there it was a direct hit, right? I can't remember the acronyms of the plaintiffs, but they represent the folks who have been injured by predatory consumer practices. And so the place where that organization would go to seek help would be CFPB. And the wrongdoer, DOGE, was directly taking a hit on CFPB and attempting to grab the personal information of the plaintiff organization's clients. So it's a direct relationship.

There's not some satellite organization who is responsible for oversight of the individual in the agency who is responsible for oversight. So -- so that's why I'm struggling with how that case gets you to the promised land.

**MS. SCHELLENBERG:** Well, again, I would say that it is direct because PEER can file with the IC and said that it would file with the IC, right? So that is a direct right there.

And then when we're talking about what DOGE was doing in the CFPB, right? It had access to the system. So there was no factual showing that it had gone in and looked at any of those

complaints or done anything at all, right?

We're making a very similar allegation that we have what OMB is doing is necessarily an impingement on CIGIE's independence, which is statutorily created to be independent. And so I think they are very much on all fours on that point.

**THE COURT:** Well, maybe it would be more persuasive if you had been using CIGIE as a clearinghouse for complaints more directly. Like, if you represented the organization who uses CIGIE, whatever that is, whether it's an association of IGs, or a union of IGs, or I -- you know, I'm not sure what it is, but I'm just throwing out examples that get you closer to your mission involving CIGIE directly as opposed to an indirect -- important problem, but sort of an indirect relationship that I'm very much struggling with.

**MS. SCHELLENBERG:** I understand, Your Honor.

Anybody can file with the IC committee, and that includes our organizations, and it has included the organizations, they have filed.

But I think I would go back, I don't want to repeat myself --

**THE COURT:** Yeah.

**MS. SCHELLENBERG:** But go back to the fact that right now, more than ever, it's essential that they be able to file those kinds of complaints because what is going on with the IG system, and that has been taken away.

**THE COURT:** But you haven't filed one in the last six months?

**MS. SCHELLENBERG:** No, because of the impingements on independence, which both of them have stated -- which PEER stated in its declaration that it no longer in good faith can use that process because --

**THE COURT:** Although it's -- and so you know, but it's very conclusory. Like, maybe if you go back to the drawing board -- because, again, dismissal would be without prejudice, so you can certainly -- and I'm -- I got to tell you, I'm leaning that way simply because a lot has happened in the last six months, too, and it ought -- I think, in fairness to you, you can take an opportunity to work that into whatever complaint you file, right? So that we don't revisit the same mootness questions, you can think about them and refile a new complaint.

But those would be the areas that I think have to be shored up with actual evidence or information. It may not need to be much, but it needs to be something more than a conclusory statement.

**MS. SCHELLENBERG:** I believe in our complaint we have alleged something beyond the idea what of -- of a conclusory statement, be it PEER, you know, is injured because these resources aren't available. You know, we do discuss at length in the complaint the various resources, how -- how they are

used. We discuss in the declaration that there is a -- there is a potential IC complaint.

And, again, some of the details on that can be given because it is nonpublic information, but it says it involves IGs, and people in that IC system.

**THE COURT:** Well, I think you have to find a way to give it to the Court, even if you can't give it to the public. You know, so there's methods for that.

But to basically say I'm not entitled to see the facts because the facts might be privileged, I'm not sure that's totally satisfied -- satisfying. But, again, I -- I am looking now at the PEER complaint allegations, and I put them with the Whitehouse declaration, and if there's something specific you want to point me to to help me out with the evidence you've given me that, you know, you say I have enough here, please do, because I'm happy to look at particular evidence and have that conversation with you.

**MS. SCHELLENBERG:** Yeah, let me look specifically.

**THE COURT:** Sure.

**MS. SCHELLENBERG:** See if there's anything that would be addressing that.

My colleague is also noting that we could file a PEER declaration under seal, if that would be helpful.

**THE COURT:** Well, right. That's kind of the thing I'm talking about, that if you -- if you decide you want to

take your hand at this district again, and you refiled the complaint, and you shore up the evidence for PEER, that would be one of the areas that you could, potentially.

And, yes, a declaration under seal, you can talk to the government about it, and whether, you know, there has to be some sort of protective order or some sort of walling off of it. But, yes, I mean, that's -- that's fair, if what you're concerned about is a waiver of privilege. And any other mechanisms you might think about, but -- but right now, all I have is "we're thinking about one complaint to CIGIE, and the rest of it, we can't tell you about."

**MS. SCHELLENBERG:** I understand, Your Honor. I -- I think when I look at the complaint facts starting around 107, and then they -- this is for PEER -- and go to 121, what I see is sufficient factual allegations on a motion to dismiss on this, but I'm not sure there's something -- you know, we're talking about the number of intakes PEER has received, we're talking about --

**COURT REPORTER:** I'm sorry, counsel. I didn't understand what you said.

**MS. SCHELLENBERG:** So I'm looking at the --

**THE COURT:** The intakes, the bump in intakes.

**MS. SCHELLENBERG:** Right. And those -- you know, the allegation that PEER is spending more time and resources counseling new clients because of these enhanced risks.

**THE COURT:** But the risks -- I'll tell you, the way that I see your injuries, you put them in three buckets. You put them in the jump in intakes, the diversion to Congress, and the lack of access to the websites. You're injured because you don't have the CIGIE websites.

**MS. SCHELLENBERG:** That's all correct, and then I would add the loss of CIGIE as an avenue of redress.

**THE COURT:** Right. Which is a really hard one for me given how infrequently you've used it in the last 17 years. Okay?

So I haven't even really -- I can stick that in, but I'll tell you, I don't see it as a really persuasive one.

But just to stick with your buckets, how -- how do I deal with this? For at least the first two, where the allegations, as pled, really put the source of the injury on the administration, not OMB, for gutting the IG system and putting in partisan IGs. I accept all of that to be true.

How is that not the real source or the primary source of the injuries you're claiming?

**MS. SCHELLENBERG:** That is a source of the injuries, but the -- the source of the primary injury that we're talking about is OMB's actions towards CIGIE, and the fact that because it has acted as it has where CIGIE is supposed to operate, it was set up by Congress to operate as a way to ensure the integrity of the IG system. So it is more important now, more

than ever, and I think that answers the question why haven't they filed more often? Because they haven't necessarily had the need to, and right now they do have the need to, and that is what we are alleging.

**THE COURT:** Yeah. Okay.

So let me ask you, and you may want to take a minute to confer with counsel, and I'll talk to the government -- well, two things. One is, do you want to be heard on any of the merits arguments that the government has raised? And, two, at some point, I do want your input as to whether you would -- if I do dismiss for lack of standing for PEER, do you want me to dismiss without prejudice, you can refile, I can think about it, or do you want me to transfer it because POGO and GAP are residents of the District of Columbia and it could be theoretically transferred there?

The reason why I ask that is because I am really reluctant to step out and discuss if I -- if I stay where I am, discuss issues of jurisdiction or merits, if the case is going to go to another judge, let that judge get it in the first instance, not the -- you know, have my cloud over it.

So that's why I want your input on that, if in the interest of justice, do I keep it here and let you all go back to the drawing board? Dismiss -- or let me just say that, dismiss, let you all go back to the drawing board, or would you like it transferred?

**MS. SCHELLENBERG:** I'll confer with co-counsel and take that break. Thank you, Your Honor.

**THE COURT:** Do you want to talk about the merits now, or do you want to save whatever you want to say until after the government has an opportunity to talk?

**MS. SCHELLENBERG:** I'll make a couple of brief remarks.

**THE COURT:** Sure. Okay.

**MS. SCHELLENBERG:** And I'll just -- it sounds like Your Honor is sort of with us on this, but I'll just state it for the record, which is that where we would begin would be with this restricted funding policy. And defendants' entire motion to dismiss is essentially based on this idea that the policy doesn't exist, and particularly right as they would argue in light of the recent events.

So what I would say, is that not only is the evidence of the initial apportionments not evidence, good evidence, that the -- that the policy doesn't exist, but, in fact, supports our argument that it doesn't exist.

And so -- and in that, one of the things that I would also talk about is that in their briefing, they continue to obfuscate the fact that they fully defunded CIGIE for 48 days, and they continue to try to talk about it as an anomaly.

**THE COURT:** And they did it by refusing to apportion.

**MS. SCHELLENBERG:** Correct.

**THE COURT:** So it wasn't a lack of appropriation, it wasn't what was going on in the shutdown.

**MS. SCHELLENBERG:** Correct.

**THE COURT:** It was -- and that's because of the way that the statute funded CIGIE to keep them insulated from congressional vagaries, right, so the only way that it can be done is for OMB to not apportion. Is that your --

**MS. SCHELLENBERG:** Correct. Correct. And if you look at the sequence of events, right? They made this decision sometime in December, which was before this government shutdown happened. They announced the policy to CIGIE, they fully defunded it, and then when asked about the defunding, their spokesman said "we're no longer going to be funding this corruption partisan system."

So I think it's quite clear that they did have -- they do have a restricted funding policy and that they acted on it.

**THE COURT:** But you make another allegation, and I'm wondering about the source, again, in the event you amend and you want to answer some of this, in my mind, is where -- what's the source for saying that future funding will now be complimented with programmatic review, which is concerning to you because it suggests that there's going to be some influence over CIGIE and CIGIE was designed to be nonpartisan without influence, what's the source of that information?

**MS. SCHELLENBERG:** The source of the programmatic

review, specifically, is a statement that Senator Grassley made, that that is what OMB conveyed to him, that the funding was subject to a programmatic review.

And it's also, I think, inherent in the announced policy that they can restrict funds for policy reasons.

**THE COURT:** I'm sorry, in the announced?

**MS. SCHELLENBERG:** So they -- they told CIGIE they made a decision to -- to not to fund them for policy reasons, and I think that's very much -- you could say that's very similar to talking about a programmatic review, because it goes back to OMB making choices based on its own unfettered consideration of what the policy and proper programming should be.

**THE COURT:** And again -- because, I'm sorry, I'm not as up on those alleged facts. I assumed it to be true because I think this mootness argument is a little bit of a red herring, so I assumed it to be true. But I guess I want to know, and maybe it's in your complaint somewhere, and you can just point me right to it, what's the actual statement that was made -- bless you -- or the record on which you're relying that OMB conveyed this to -- to CIGIE and so you know this to be their policy, if you will?

**MS. SCHELLENBERG:** Yeah, that would be -- specifically, as to the programmatic review point --

**THE COURT:** Yes.

**MS. SCHELLENBERG:** -- that's Paragraph 86.

**THE COURT:** 86.

**MS. SCHELLENBERG:** And then that has a footnote citing to the document that Senator -- that Senator Grassley put out on that point.

**THE COURT:** Okay. Great.

And then -- okay. And then you also have -- let me just make sure I see -- get this.

Okay. So you're relying on Grassley, Senator Grassley's statement. And on to the second piece, which is that OMB conveyed to CIGIE, did you say that?

**MS. SCHELLENBERG:** Yes. So that is from a letter that CIGIE sent to Congress saying here's what OMB told us.

**THE COURT:** Oh, that's right. Okay. Got it.

**MS. SCHELLENBERG:** And then the language about the partisan and corruption, that came from an OMB spokesperson who stated that on the record to the press.

**THE COURT:** Understood. Okay.

So I'm sorry, I interrupted you, go ahead.

**MS. SCHELLENBERG:** Oh, yeah. I think -- I'm not sure if it's -- Your Honor wants to hear it, but I can go through the various apportionments and talk about why those are evidence of the restricted funding policy, but it does seem like you may be with us on that point, so I don't need to --

**THE COURT:** At least with respect to, I think, you

know, the APA violations are relatively straightforward, I believe. Ultra vires is a little bit out there, as is mandamus. I mean, I understand why you're saying the Court can use its inherent powers to enjoin.

Maybe you do want to speak on ultra vires a little bit, just so the record is clear, in the event I do change my mind, and in the event the government wants to be heard on it and you have the information for purposes of amendment.

**MS. SCHELLENBERG:** Yeah, our ultra vires claim is based on -- primarily on the fact that OMB has no statutory authority to defund an agency based on its policy preferences. And so that is and what we've alleged in that count. And at this stage, if it's a motion to dismiss in terms of whether that's the only way to remedy that violation, I think what we would say is that it's not appropriate to dismiss at this stage, but that certainly at a later stage, if we were to get relief on our APA claims, we would not be in an ultra --

**THE COURT:** I think about ultra vires as such an unusual and extraordinary -- it's acting outside the law. And if OMB is -- its task is -- tell me if I'm using the wrong words, because you all are steeped in it, but basically it's to enforce compliance. And that word "to enforce" -- yeah, to assure that agencies are complying with the Anti-Deficiency Act. And in doing so, its job is to apportion funds to make sure that funds aren't all spent up in the first couple of

weeks.

That's what they did here, right?

You're just -- you're challenging the reason why they did it, and its applicability based on the reason, if it's based on some policy that really is contrary to Congress' -- the plain language of the -- and the intent of the CIGIE statute. But how is it ultra vires?

**MS. SCHELLENBERG:** The -- I think the germ of the ultra vires claim there is that CIGIE -- is that OMB has zero authority from apportionment to zero out an agency, to basically destroy it. That's not something -- particularly, yes, we're going back to our policy reasons, but that it has no authority to do that.

**THE COURT:** But it does have authority, at least historically, every year, it apportions the funds for the year for CIGIE, right?

**MS. SCHELLENBERG:** Yes.

**THE COURT:** And are you saying that there is some law somewhere that says they have got to do that with CIGIE, they got to basically -- fiscal year comes around, they got to apportion the funds for the year so that CIGIE can operate for the year, and they can't -- they can't do it in the chunks that they have been doing it?

**MS. SCHELLENBERG:** We're not arguing with regard to, like, OMB's general authority to apportion in chunks. What

we're arguing is related to OMB's ability to apportion for policy reasons. And then in terms of whether there's any kind of mandatory duty from statute, you know, we're pulling from the Anti-Deficiency Act and the Impoundment Control Act to make that allegation.

**THE COURT:** So are you saying if OMB makes the choice to fund differently, apportion differently, they have got to have some justification for it? Or can they just do it as long as the justification isn't, as stated, for programmatic reasons? I'm just curious as to what the -- how does OMB -- how does OMB avoid an ultra vires allegation, in your view?

**MS. SCHELLENBERG:** Well, I think particularly, to this case, they avoid the ultra vires if they don't defund an agency, which there's no authority in any of those statutes that talks about OMB having the unilateral power to basically destroy a congressionally-created agency.

**THE COURT:** To just not apportion it?

**MS. SCHELLENBERG:** Yes.

**THE COURT:** To decide we're not doing it.

**MS. SCHELLENBERG:** Yes.

**THE COURT:** I see. Okay. Okay. We'll see what the government says about that.

**MS. SCHELLENBERG:** Thank you, Your Honor.

**THE COURT:** Thank you.

Okay. Is it Mr. Sirkovich?

**MR. SIRKOVICH:** That's correct.

**THE COURT:** All right. Wherever you are comfortable.

**MR. SIRKOVICH:** Good morning, Your Honor. May it please the Court.

CIGIE's complaint is -- suffers from several timing issues, and you can look at these issues whether through the lens of standing, whether through the lens of mootness, ripeness or final agency action. All of them dictate the same outcome, which is dismissal of the plaintiffs' complaint.

Starting with standing, which Your Honor has already expressed skepticism towards at least one of plaintiff's casing for standing, at the time the complaint was filed, there was no act of injury.

**THE COURT:** But there was, according to the complaint, a policy which, according to the complaint, OMB followed to not apportion funds for 43 days, which shuttered CIGIE.

**MR. SIRKOVICH:** So we disagree that that constitutes final agency action, but even if you accept the complaint's allegations on that as plausible, and you agree that there was an agency action to do that in September, on November 18th, funding was restored to CIGIE. Plaintiffs then sat on their rights for another month. They could have brought a lawsuit during the time that CIGIE was not active, not processing complaints. They didn't do so. They then could have done it

after funding was restored.

**THE COURT:** Sure, but -- okay. But that doesn't --

**MR. SIRKOVICH:** But they waited a whole month before doing that.

**THE COURT:** Right. And how does that deprive them of a cause of action?

**MR. SIRKOVICH:** At the time -- so standing is analyzed at the time that the complaint is filed.

**THE COURT:** Okay.

**MR. SIRKOVICH:** At the time that they filed, all of CIGIE's statutory responsibilities were being fulfilled. The websites were back online, Oversight.gov and Ignet.gov. The complaint -- the avenues of redress that plaintiffs talk about were open and available to them.

**THE COURT:** Okay. So let me stop you for a second.

What about the plaintiffs' -- again, in the light most favorable to them, their argument is that this 43 days was the opening shot with respect to a policy, and now it's this sort of the Damocles that hangs over CIGIE's head to either fold in the way the administration wants it to, or it will face defunding again.

And perhaps one fact in the plaintiffs' favor is that OMB just didn't fund it for the year, they are doing it in these 90-day chunks, which suggest, in fairness to the plaintiff, some sort of oversight that wasn't there before.

**MR. SIRKOVICH:** Yes. So I think there are a couple of cases we cite on this case, that past events, even disconcerting ones, are not sufficient to confer standing to seek injunctive relief.

However, I think what Your Honor is getting to is, well, maybe they can at least serve as evidence of an imminent injury forthcoming.

But even accepting that, looking at all the other facts that we have, that there's been apportionment in November, a month before plaintiff brought their complaint. Then they brought a complaint saying, well, come the end of the continuing resolution, on January 30th, CIGIE is going to shut down again and we are going to be injured at that point. They said that very definitively. Come that time, funding was apportioned --

**THE COURT:** Right. But let me stop you there again.

So when they filed this complaint, you had only funded -- OMB had only funded CIGIE for three months, right?

**MR. SIRKOVICH:** That was all the funding that had been apportioned at that point.

**THE COURT:** So the answer is yes.

**MR. SIRKOVICH:** But that's normal for apportionment.

**THE COURT:** Well, not for CIGIE. That's in the complaint. In the complaint, it said historically, CIGIE's fund -- is funded annually.

**MR. SIRKOVICH:** CIGIE does get a large annual apportionment. It also often gets additional apportionments that are made --

**THE COURT:** No, I understand that.

But at the time in which the complaint was filed, the only reasonable expectation for funding was it was going to run out in January. So why is that not completely in the sweet spot of filing the complaint? They did it, they are about to do it again, and when they do it again, CIGIE is out of business, and we need them to be in business.

**MR. SIRKOVICH:** I think it was too late with respect to what had happened in September, October, November. And it was not ripe with respect to January. And then after funding came --

**THE COURT:** So when would you have them file? Exactly what day and time must they land the complaint?

**MR. SIRKOVICH:** I think at the actual point in time that CIGIE was not operational, and they weren't able to bring complaints, that would have been an appropriate time to file a lawsuit.

And there may have been other issues, still, with justiciability and standing, but that would have been a much more appropriate time to bring this lawsuit. But, instead, after the January apportionment was made, they said, "Well, we can't be sure that the funding in the fourth quarter is coming.

There isn't any funding yet for that."

Well, as the declaration that we filed last night shows, another apportionment was made in March and in June.

So this funding has kept coming and kept flowing, so while that initial --

**THE COURT:** So in that regard, what -- if what you're saying is, listen, we've been -- we've been operating above board in good faith, we're not interested in programmatic review, they are all completely wrong about that, how about putting pen to paper and getting your client to issue a declaration to that effect so that it really does moot the government action in the way that the law contemplates? Because otherwise, what courts struggle with is, as soon as I dismiss this case, it's going to happen again.

You know, that's -- so tell me about that.

**MR. SIRKOVICH:** So I think the reason that that hasn't happened is that at this stage, on a motion to dismiss, the onus is on plaintiffs and their complaint and their allegations. It's not on the government.

**THE COURT:** No, I understand that. But there's a body of law which suggests when the government has taken an adverse action, and they want to moot that adverse action, they can't just stop doing it because it can come back.

**MR. SIRKOVICH:** So they mooted it before -- a month before this lawsuit ever was filed. So typically, when we

think of voluntary cessation, we think of defendant is trying to escape a court's review for a challenged conduct. This conduct wasn't challenged at the time that the defendant ceased from doing it, even in plaintiffs' telling.

So that's why it was too late in December, when they filed their complaint. And it's -- it's not a ripe issue now on what OMB might do -- first they were asking about January and then July. We saw that the funding came forth last night. I'm sure when we go back to them, they are going to talk about the next quarter.

We could stand on this forever, but I don't think Article III envisions courts just sort of standing waiting for a harm to occur. That's just -- we risk just sort of superintending OMB's apportionment authority waiting for them to do something wrong.

I think the other really important point here, too, is plaintiffs are not CIGIE, they are not the ones that are dependent upon this funding. And so it sounds like their main grievance has gone from, well, they totally refuse to apportionment funding to, well, they are not apportioning the full amount that we think CIGIE is entitled to.

What we don't see is any connection to the plaintiffs and why that matters to them. And there --

**THE COURT:** Well, that's largely the conversation that we have been having about standing --

**MR. SIRKOVICH:** Exactly.

**THE COURT:** -- is that I tend to agree with you on that.

**MR. SIRKOVICH:** Because whether -- whether it's given in one lump sum in the beginning of the year, or given in four quarterly apportionments, or however else that OMB tries -- attempts to do it through its authorities under the Anti-Deficiency Act, what matters to plaintiffs is whether CIGIE is carrying out its statutory responsibilities. It is. And it has been doing so since a month before they filed their lawsuit, and it continues to do so today.

**THE COURT:** So assume, for sake of argument, just because I put the plaintiff in that position, and I really do want your view on this, assume I -- I disagree with you on timing, and that there is enough pled in the complaint that there is at least a policy, if you will, that OMB was following when it didn't apportion the funds and now when it's doing this three-month increment thing, do you have anything more to add or anything different that you want me to address with respect to standing?

**MR. SIRKOVICH:** So I think we've focused a lot of the conversation so far today on PEER's standing. We also don't think that the other two organizations have standing.

**THE COURT:** For the same or different reasons?

**MR. SIRKOVICH:** I think largely the same. I think

with the exception of being that, with respect to PEER, it being an environmental organization, seems like, in a special -- especially like a misfit for this type of case, and we think that whistleblowing is much more of an ancillary interest. And even if it were considered a core interest of theirs, the idea that they might have one complaint that they are thinking about filing is not exactly the same standard as impairing their core mission.

I think that PEER is able to -- when we think about impairment, I think we're thinking about an organization no longer being able to operate, and PEER --

**THE COURT:** But it doesn't have to be that.

**MR. SIRKOVICH:** It doesn't have to go that far, but I think it's closer to that than it is to we have one maybe-someday complaint.

I think it's also important -- we've talked about their injury and its relationship to their mission, but we touched a little bit on redress. I think that's a huge problem for them, because as we've stated, the funding is flowing, the complaint line is open, and yet they still don't feel like they can go to it.

So what would an order from this court do that would change that dynamic? And if we look at the Whitehouse --

**THE COURT:** Let me get your view on a different redressability problem that I didn't yet talk with

Ms. Schellenberg yet, but I may, is even if I issue this order that says you can't do what you did before, and CIGIE stays open, there's no guarantee in the outcome of a CIGIE process. In other words, the plaintiffs' -- the thrust of the plaintiffs' case is that CIGIE needs to be there to keep the IGs honest and to keep this process working; we haven't had to use it before, because everything has worked well, now it's not.

But in a -- when you have this body, this oversight body, you have no guarantee as to whether the complaint will be filed. Yes, there's a statute in place that says they got to consider it, they got to move on it, but we don't know what the outcome will be. It seems very attenuated and lots of things can happen in the middle.

**MR. SIRKOVICH:** That's right.

And just one thing I think I would add to that, is that the one piece that is guaranteed, is that under CIGIE's enabling statute, they are required to report to Congress on the outcomes of their referrals and their investigations.

**THE COURT:** So they do get that.

**MR. SIRKOVICH:** So there is a role here for Article I to step in and say we saw this investigation that you did, we aren't satisfied, whatever. And we've already seen Article I get involved with Senator Grassley's outreach and that type of thing.

So I think it's just from like a separation-of-powers viewpoint, it's worth considering, like, whether Congress is capable of policing this issue at all on its own, and I think it probably is.

But returning to the redressability issue that PEER has, looking at the Whitehouse declaration now, in Paragraph 17, they say that following a full defunding that they think is imminent -- or I'm sorry, following the past defunding, PEER cannot in good faith counsel clients to file complaints because CIGIE's IC requires political independence to function properly.

But then on Paragraph 27, they don't say that the relief they are seeking would actually restore their belief in the independence of CIGIE. They say it would reduce the appearance of political interference. And in their briefing, they described it as a step towards the ultimate relief they want.

But the relief a court enters has to actually do something, it has to be effectual in some way. And nothing from the Whitehouse declaration, nothing from the briefing indicates that it would have any actual effect.

And so I think that redressability issue is a problem for PEER, but it's a problem for all three of the plaintiffs.

**THE COURT:** How about the -- how about the website that is used as a clearinghouse for information that PEER, you know -- yes, I don't find it to be terribly sufficient now, but

they say they can amend and give me all kinds of information about how they've historically used that website, how about that?

**MR. SIRKOVICH:** I think that for an informational injury, the typical form of relief we would think of as retrospective, oh, you denied the information, well, give the information. And that's what happened. The information was offline for 48 days, or whatever it was, and then it was restored and it was back online, and everybody can go look at it right now and see the information that's on there.

So the idea that it would entitle plaintiffs to prospective relief, I think, is a dubious one.

I think, you know, in addition to PEER's standing, the other two plaintiffs suffer from a lot of similar issues. They say in -- that they are unable to access avenues of redress that were previously open. Those avenues are open, and they could file a complaint if they say they have one. There's nothing stopping them besides what they describe is just this atmosphere of unease with the idea of doing so.

And that sort of vague and ambiguous idea, it isn't a concrete injury for Article III purposes, and so that undermines their standing as well.

And, yeah, we just covered the informational injury.

So I think that is how I am seeing the entirety of the injuries they allege, and I don't think any of them are

sufficient for any of the three plaintiffs.

So I think this court could grant the motion to dismiss on standing issues alone.

**THE COURT:** I think I have to because it's a jurisdictional question. And I -- I am -- the way that I'm thinking about it is, is I have to be careful to not issue advisory opinions, and the Court -- I guess I could do things in the alternative, but I'm not inclined to, especially this early in the case. So got to reach jurisdiction first.

I agree with you that if PEER doesn't have standing, you're done in this court.

Do you disagree with that, or do you have some other principle that you want me to consider in terms of stepping out on these other issues?

**MR. SIRKOVICH:** I think that if PEER doesn't have standing -- or if all three of the plaintiffs don't have standing in this court, they wouldn't have standing in another court. And so I think it would be sort of inefficient for the parties to go and do this all over again in DDC, or wherever else, if we've already concluded that this is not a case of controversy because standing has not been met. And I don't think plaintiffs are necessarily entitled to a second bite at the apple in that way.

**THE COURT:** Although if I were the one to say that no one has standing, I would dismiss without prejudice, and they

could refile, in theory. They could attempt to shore up their standing arguments.

And my concern, just from an interest of justice standpoint is, if this case properly belongs in D.C., and I suspect it may, then that judge should be the one to have the first look at this because it's -- the venue is proper there. So that's -- I mean, it's an authority procedural issue. I'm trying to err on the side of less is more, especially as a district judge.

**MR. SIRKOVICH:** That makes sense.

I think, then, with the question with respect to transfer or voluntary -- or, I'm sorry, dismiss without prejudice, I think we would lean towards dismissing without prejudice, because these issues should have been apparent at the time the complaint was filed. And the venue statute is there for a reason, and it does seem that PEER was sort of added to this complaint just to put us in Maryland. And that was clear from the outset.

So we think voluntary dismissal would be warranted -- or sorry, dismissal without prejudice.

**THE COURT:** Okay. All right.

**MR. SIRKOVICH:** Are there any other questions Your Honor has?

**THE COURT:** I don't. I appreciate it.

**MR. SIRKOVICH:** All right. Thank you.

**THE COURT:** Okay. Ms. Schellenberg? You have the last word.

**MS. SCHELLENBERG:** Thank you, Your Honor.

Two things I want to address.

First, I want to go back to representation or how counsel was characterizing the apportionment that happened on November 18th.

And I think that's -- that's really critical, particularly to the arguments that they are making, right? Because they are saying once that happened, the whole thing is moot, we provided the funding, what are you talking about?

And I think the reason that's wrong is because we're alleging they put in place a policy, and the November 18th apportionment does not show that policy doesn't exist; in fact, it shows that it does exist, and that they were going to imminently defund, and here's why.

So on a few days prior to that, Congress passed a continuing resolution which stated that executive agencies can't RIF and cannot furlough until January 30th. Notably, January 30th is not the end of a fiscal quarter, right? It is a deadline that they made in that statute.

And what OMB did was turn around and instead of, you know, oh, maybe it's sort of changed its policy, which it never said it has and it's never walked back, right? And instead, it apportioned funds, a limited amount, with a footnote limiting

what they can do while saying they are doing a programmatic review, and they did it just up until November -- just up until January 30th, which was just the date they had to do before they could go ahead defund and RIF people again.

And I think there's a very plausible inference raised from that that that's exactly what they intended to do.

**THE COURT:** But they didn't do it because you filed the suit.

**MS. SCHELLENBERG:** And then we filed a lawsuit.

And so after we filed a lawsuit, all subsequent apportionments are not good evidence of what defendants' true intentions are because they have been done in the shade of litigation.

And I will add that all subsequent apportionments are also restricted.

CIGIE put forth a budget of about 22 million in its congressional budget justification. Over the course of the year, OMB's apportioned now a total of about -- around 14 million, so that's about 40 percent less. So that's a pretty significant restriction there.

And I will note, in our complaint, we did -- we did allege that there are practical implications to those funding restrictions, as well. And I think that we have seen some of those.

**THE COURT:** Okay. And I -- I understand that. And

that's -- those are factual developments that in a renewed complaint may be very important.

**MS. SCHELLENBERG:** Thank you, Your Honor.

And on the point about dismissal with prejudice or transfer --

**THE COURT:** Without prejudice.

**MS. SCHELLENBERG:** Excuse me, dismissal without prejudice and transfer, I think we would lean towards the dismissal-without-prejudice option so that we could have the option of including more facts to show that PEER does have standing.

**THE COURT:** Yeah, I have to say that, from both sides, it seems like you're in agreement on that, and that makes the most practical sense, too, because if I transfer, I transfer this current complaint, which, in some ways, has some age on it. And you've got responses to what the government is saying, and there have been, you know, facts on both sides that could be relevant to a pleading. So it does seem to me wise to do it that way, so I'm not going to have any problem with that.

**MS. SCHELLENBERG:** Thank you, Your Honor.

**THE COURT:** Okay. Now the fun part, because I'm going to make you sit through this. But you can also get a transcript, because I really do not want to delay where this case goes next. And the way I took the bench was that unless you know me off my block, I was going to rule today so that

you have it and you can go forward.

So I'm going to read this into the record.

I will make sure that, Ms. Leeper, if you have any questions with respect to citations, you get the proper citations, and you all can have a transcript of this.

So pending is defendant Office of Management and Budget, OMB, and OMB Director Russell Vought's motion to dismiss the complaint for lack of subject matter, jurisdiction, venue, and for failure to state a claim. And that's at ECF 30.

I'll refer to the defendants collectively as OMB.

Three plaintiffs, Public Employes for Environmental Responsibility, PEER, the Government Accountability Project, GAP, and Project on Government Oversight, POGO, sue OMB and Director Vought over OMB's policy decision to quote, defund, end quote, the Council of the Inspectors General on Integrity and Efficiency, what we've been calling CIGIE, or sometimes I will call The Council, after OMB, quote, refused to apportion any funds to CIGIE from October 1 through November 17, 2025, and then when it apportioned, quote, a fraction of its funds for limited purposes, until January 30, 2026, ECF Number 1, Paragraph 7.

CIGIE is a statutorily-created council whose mission is to, quote, increase the professionalism and effectiveness of personnel by developing policies, standards, and approaches to aid in the establishment of a well-trained and highly-skilled

workforce in the Offices of the Inspectors General. That's at 5 U.S.C. Section 414(a)(2)(B). CIGIE includes 70 IG Inspector General -- I'm going to call IGs from here forward -- members across a wide array of executive and legislative agencies, as well as senior officials from OMB, Office of Personnel Management, Office of the Special Counsel, Office of Government Ethics, and Federal Bureau of Investigation.

The statutory citation is 5 U.S.C. 424(b)(1) and ECF Number 1, Paragraph 31.

CIGIE's overall mission is to develop and support highly-competent IGs through education, training, oversight and accountability. Complaint at Paragraph 35.

It offers website services allowing people to submit complaints of waste, fraud and abuse within government agencies, but it also receives and investigates claims against IGs themselves. And that's at Paragraphs 40 through 46 of the complaint.

Although OMB eventually apportioned funds at the end of November 2025, the complaint alleges that OMB unlawfully, quote, apportioned zero funds for the remainder of the fiscal year for 2026. Since the filing of the complaint on December 17th, 2025, however, CIGIE was apportioned funding through the fourth quarter of the fiscal year of 2026.

However, I do note that the plaintiff maintains that funding was not nearly the funding that it would -- that CIGIE

would otherwise have received through appropriations to fully operate.

Funding for CIGIE is unusual and statutorily mandated. Congress directed CIGIE to establish a revolving fund called the Inspector General Council Fund, 5 U.S.C. 424(c)(3)(B)(i)(1).

You can have this, Ms. Leeper, when I'm done.

The revolving fund receives periodic dues from IG offices after Congress appropriates the funding. CIGIE next collects those funds in one fiscal year to be used for the next fiscal year. And that's at Paragraph 67 of the complaint.

The funding structure effectively, quote, insulates CIGIE from lapses in appropriations providing that OMB, under the Anti-Deficiency Act, apportions the funds for CIGIE's use. That's at Paragraph 68 of the complaint.

Since CIGIE's inception, OMB has apportioned CIGIE's yearly funding at the start of each fiscal year, that's at Paragraph 76, except in fiscal year 2026.

On September 6th, 2025, right before the start of FY26, OMB announced that per it's, quote, policy decisions, CIGIE would not receive an apportionment for FY 2026.

CIGIE, in turn, could not spend any funds because under the Anti-Deficiency Act, an agency can only spend funds which OMB apportions. As a result, CIGIE was crippled overnight. It ceased all training and oversight operations, took down its

website's activities and could not investigate any complaints -- investigate any complaints against IGs. I refer you to Paragraphs 50 to 53, and 79, in the complaint. Nor did CIGIE's training institute operate, and that's at Paragraph 57.

43 days later, on November 18th, OMB reversed course and apportioned over $4 million to CIGIE's fund for, quote, salaries and expenses, or to make payments required by law, through January 30, 2026. Paragraph 83 of the complaint.

But OMB's decision to only partially fund CIGIE destabilized The Council as it could not rely on a funding stream necessary to resume operations in the long run.

Accordingly, plaintiffs filed this suit on December 17, 2025, largely because OMB had made no representation for future funding for the rest of FY 2026.

However, alongside OMB's refusal to apportion funds, the Trump administration unleashed a full-throated assault, and this is according to the complaint, taken in the light most favorable to the plaintiffs, on the IG system more generally. Within the first week of President Trump's taking office, the administration fired 17 IGs. And that's at Paragraph 1 of the complaint. It's quoted as, days into his new administration on January 24, 2025, President Donald J. Trump fired 17 Senate-confirmed Inspectors General, including many he had appointed in his first term.

Particular to PEER, who is the subject of my decision

today, the administration terminated every IG at every agency with which PEER has historically interacted, to include the Environmental Protection Agency, the Department of the Interior, Department of Commerce, Department of Energy, Department of Labor, and the Department of Agriculture. That's Mr. Whitehouse's affidavit, he's the director of PEER, at 33-1 Paragraph 7.

The administration also implemented a campaign of fear and intimidation aimed at whistleblowers attempting to report waste, fraud and abuse by installing IGs who would launch retaliatory investigations. I take that from the complaint -- nope, I take that from Mr. Whitehouse's affidavit, but it's also in the complaint.

Nonetheless, plaintiffs allege that OMB's unilateral decision to refuse apportionment absent OMB's programmatic review of CIGIE amounts to a policy that violates the Administrative Procedures Act, that's Count One through Three, and separation of powers, Counts Four.

Plaintiff also urges the Court -- or plaintiffs urge the Court to use its mandamus power to compel that OMB apportion funds so that money in CIGIE'S coffers can be used to fulfill its statutory missions, that's at Count Five.

And last, the complaint avers that OMB's refusal to apportion funds is ultra vires, Count Six.

As relief, plaintiffs asked the Court to enjoin OMB from

future enforcement of what I call the OMB policy, declare the same unconstitutional, and direct OMB to apportion appropriated -- or I should say in violation of law, not necessarily unconstitutional -- and direct OMB to apportion appropriated funds to CIGIE without regard to the OMB policy.

OMB, in its motion to dismiss, challenges jurisdiction, venue and sufficiency of the claims.

The Court reaches only whether PEER maintains standing to sue, because the sole basis for venue in this district depends on PEER remaining in this case, as PEER is the only plaintiff with a Maryland presence. And I cite to you ECF -- the complaint at Paragraph 19, as well as the operative venue statute, 28 U.S.C. 1391(e)(1).

Thus, if PEER lacks standing, then venue is improper and the case shall be transferred or dismissed.

For the following reasons, the Court concludes that PEER lacks Article III standing:

Standing cuts to the heart of this court's power to hear the case. I cite to you not only the Rule of Civil Procedure that the government must move under, which is 12(b)(1), but also *United States ex rel Vuyyuru v. Jadhav*, J-A-D-H-A-V, 555 F.3d, 337, 347, Fourth Circuit, 2009, as well as *Jones v. American Postal Workers Union*, 192 F.3d, 417, 422, Fourth Circuit, 1999.

PEER, as the party seeking to invoke this court's

jurisdiction, bears the burden of establishing that it has standing to sue. And I cite to you *Robb Evans and Associates, LLC v. Holibaugh*, that's H-O-L-I-B-A-U-G-H, 609 F.3d 359, 362, Fourth Circuit, 2010, as well as *Lovern v. Edwards*, 190 F.3d 648, 654, Fourth Circuit, 1999.

To resolve the standing question, the Court considers the complaint facts viewed most favorably to the plaintiffs. And I cite to you *Lovern* at 654, as well as *Davis v. Thompson*, 367 F. Supp. 2d 792, 799, District of Maryland, 2005, and may consider extrinsic evidence to ascertain whether it has jurisdiction to hear the case, citing to *Richard, Fredericksburg & Potomac Railroad Company v. United States*, 945 F.2d 765 at 768, Fourth Circuit, 1991.

PEER proceeds solely on an organizational standing theory. Accordingly, PEER must show that, quote, it suffered an injury in fact to the organization itself that is, A, concrete and particularized; B, actual or imminent, not conjectural or hypothetical; C, fairly traceable to the challenged action of the defendant; and D, likely to be redressed by favorable decision.

Quoting to you *Bishop v. Bartlett*, 575 F.3d 419, 423, Fourth Circuit, 2009. Also, see *Davis v. FEC*, F-E-C, 554 U.S. 724, 733, 2008.

A plaintiff must have a cognizable and redressable injury as to each claim presented and each form of relief sought.

That's from *Davis*, 544 U.S. at 734.

In this way that, quote, the standing inquiry remains focused on whether the plaintiff has the requisite stake in the outcome when the suit was filed. And that's going back to the same citation in *Davis*.

Turning first to whether PEER has shown sufficient injury caused by OMB's policy, organizational injury is that which visits, quote, a concrete and demonstrable injury to the organization's activities, such as causing a consequent drain on the organization's resources. That comes from *Havens Realty Corp v. Coleman*, 455 U.S. 363, 379, 1982. See also *Lane v. Holder*, 703 F.3d 668, 675, Fourth Circuit, 2012.

An organization's reallocation of resources will not alone confer standing when, quote, it results not from any actions taken by the defendant, but rather from the organization's own budgetary choices. That's a quote as modified from *Lane*, 703 F.3d at 675, quoting *Simon at Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40, 1976.

To assess whether the OMB policy has injured PEER as an organization first requires understanding what PEER does and to what extent it relies on CIGIE, the OMB policy's target, to accomplish their mission in the ordinary course. PEER's a nonprofit organization whose mission is to, quote, protect public employees who protect our environment, natural resources and the public health. That comes from Paragraph 105 of the

complaint.

PEER engages in a wide array of advocacy services to advance environmental protections. Their activities, no doubt, include assisting current and former employee whistleblowers and exposing, quote, improper or illegal government actions relating to the environment. And at times, PEER helps whistleblowers file complaints with agency IGs. That's taken from the complaint at Paragraphs 12, 13, and 105. It's also taken from the Executive Director's declaration, Timothy Whitehouse, at Paragraph 4, where he says counseling and defending whistleblowers is a central part of PEER's mission.

The scope of the services relevant to standing, however, appear limited, at least according to the evidence before me. In the past five years, PEER has only helped four individuals file whistleblower complaints to IGs and has filed 12 of its own. And that's from Paragraph 106 in the complaint.

In total, PEER estimates it has devoted 1,000 hours to such efforts, or 200 hours per year on average. While this may sound like a lot, it is not for an organization the size of PEER. And while PEER is certainly small by corporate standards, it boasts a national presence, it has 16 staff members, 10 board members, and three legal interns. This comes from the PEER website which was quoted at times in, I believe, the complaint and the affidavit. So I take judicial notice of it.

PEER also does not demonstrate, at present, a direct engagement with CIGIE in the ordinary course as with IGs. Certainly there's a more direct engagement with IGs, as pled, than CIGIE's.

PEER claims to have, quote, at times, submitted its own complaints through IG hotlines and has referred numerous individuals to IG hotlines over this period. That comes from Paragraph 107 of the complaint.

But if, as represented, PEER has filed a total of 16 whistleblower complaints in the last five years, and even if all of them had been filed using the CIGIE hotline, the involvement with CIGIE is not substantial. Nor has PEER, at this juncture, demonstrated more than a de minimis historic involvement with CIGIE to help, quote, restore the integrity of specific OIGs. That comes from Paragraph 115 of the complaint.

But according to Footnote 63 of the complaint, PEER has filed a single complaint to CIGIE in 2009, and that's 17 years ago, and wrote CIGIE a letter in 2011.

With PEER's relevant, ordinary course activities in mind, the Court next turns to how PEER contends the OMB policy visits injury on it.

PEER points to three main injuries which it claims have been caused by the OMB policy.

First, PEER claims injury arising from the spike in resources it must expend as a result of its clients', quote,

growing distrust of the IG process, end quote.

PEER represents that client complaints or intakes have increased tenfold because of the, quote, deteriorating trust in IGs. And that comes from Paragraph 119. Paragraph 119 deserves a special shout-out, so let me read it.

At the same time that individual client counseling is becoming more time intensive, PEER's workload is increasing significantly. In this year to date, PEER has received over 300 intakes, a significant increase from the 20 to 40 intakes PEER received in previous years. PEER attributes this increase in intakes in part to the deteriorating trust in IGs.

And Paragraph 120 also supports that point.

But by PEER's own showing, distrust in the IG system stems from the administration having fired nearly close to 30 percent of the sitting IGs, including all IGs responsible for agencies with which PEER had previously closely interacted with, combined with the installation of partisan and retaliatory IGs. And I point you to the Whitehouse affidavit, Paragraphs 7 and 8, 11 and 12.

By contrast, PEER has shown no connection between CIGIE's operations, or lack thereof, and the spike in complaints based on IG distrust.

And given the relatively little interaction PEER historically has had with CIGIE, this leads the Court to conclude that the principle source of the increased caseload

lies not in CIGIE's shuttering, but the administration's assault on IGs, the firing of the IGs, the retaliate -- and the placement of partisan or retaliatory individuals in the roles of IGs as pled in the complaint.

Accordingly, the Court cannot conclude that the increase in intake complaints is because of the harm that the OMB policy visits on CIGIE.

Second, PEER contends that it has needed to expend significant resources pivoting to whistleblower actions to filing whistleblower actions with Congress. And that's at ECF 33-1, 20 through 26; Paragraphs 20 through 26.

Similar to the spike in complaints, PEER attributes this pivot to a growing distrust of the IG system. But, again, this distrust most plainly stems from the firing of agency IGs and the retaliatory acts of the remaining IGs.

While I understand the plaintiffs' point is that hamstringing CIGIE certainly aids in that distrust, it's less obvious that the OMB policy, which threatens to defang CIGIE, has necessitated that shift of resources to filing complaints with Congress.

Certainly PEER has not provided sufficient concrete evidence for the Court to conclude that the resource diversion is a result of the OMB policy over and above the administration's assault on IGs.

More to the point, it is, quote, pure conjecture, end

quote, to believe that, quote, absent, end quote, the OMB policy, the assault on IGs and PEER's consequent pivoting to congressional whistleblower complaints would have never occurred. And I cite to you *Friends for Ferrell Parkway, LLC*, 282 F.3d at 322. The full cite for that I thought I had somewhere, but I don't. We will get the full cite for *Ferrell*, and make sure it's in the transcript.

[NOTE FROM CHAMBERS TO COURT REPORTER:
*Friends for Ferrell Parkway, LLC v. Stasko*,
282 F3d 315, Fourth Circuit, 2002]

**THE COURT:** Okay. Where was I?

All right. Last, PEER contends that OMB policy injured PEER by depriving them of access to two websites, Ignet.gov and Oversight.gov. PEER asserts that it relies on Oversight.gov in its, quote, mission-critical client counseling and public education efforts, and on Ignet.gov for access to whistleblower hotlines which PEER uses to file its own complaints as well as to help clients file complaints with the OIGs that are made accessible through the website. And I looked to the affidavit at Paragraphs 16, 59 and 60.

As for filing complaints on the website, PEER has not demonstrated that with CIGIE down, it had no method to file complaints with the IGs, and the mere deprivation of one avenue cannot alone be said to have injured PEER perceptibly, especially when PEER has filed only 16 such complaints in five

years. Looking principally to the affidavit at 7 and 8, 11 and 12. And I also know that the complaint made reference to this as well.

Indeed, even if every one of the 16 were filed using the CIGIE website, the relative infrequency of filing via the CIGIE website cannot be said to perceptibly impair PEER's mission.

As for having been deprived of CIGIE's online information resources, PEER offers no detail on how, when, how often, and to what extent PEER specifically relies on the website in a way that its 43-day taken offline, and even if I assume that that could happen again, materially impairs its mission in its inability to access that website.

The averments simply lack any specificity and are too generalized to provide concrete injury. From this, the Court concludes that PEER has not carried its burden of showing that it sustained concrete particularized injury as a result of the OMB policy. And the Court could dismiss on -- for lack of standing on this basis alone, but it will reach why the claimed injuries are neither traceable to OMB or redressable via this lawsuit.

Let me take a moment to just distinguish *AFL-CIO* in that regard, because the plaintiff does spend some time today and in its filings analogizing its case to that one. You cite *AFL-CIO* for the proposition that an organization need not be entirely hamstrung by an action to have standing, but that a failure to

help an organization's client file complaints in good faith in light of defendants' action is sufficient to confer standing. You make that argument at ECF Number 33, Pages 18 and 19.

But the Court finds the injury presented in *AFL-CIO* to be meaningfully distinct from the harm here. There, the organizational plaintiffs, quote, provide direct services to customers experiencing difficulties with financial products and services such as predatory loans. And that's at Page 75 of the opinion. The full cite to the opinion is 778 F. Supp. 3d 56, the District of Columbia, 2025.

The CFPB is the direct repository of customer-related complaints, and in light of defendant DOGE's expected access to sensitive personal information, plaintiffs could not recommend using CFPB's complaint system. And that's at Pages 67 and 75 of the opinion.

Critically, however, plaintiffs directly engaged with CFPB, the target of the defendants' expected wrongdoing. The CFPB equivalent here, in my view, at least currently, is the IGs at best, not CIGIE.

PEER can only allege that it filed a complaint through CIGIE one time in 2009. Moreover, according to PEER, the alleged injury that the OMB programmatic review of CIGIE would lead to is that it undermines CIGIE's independence and dependability, which could, and that's a word that we take from the pleading, in turn, affect the viability of other clients'

future complaints. And that's just not sufficiently concrete and particularized. Certainly, it's not the same showing that was made in *AFL-CIO*, which is the point of this diversion.

So in the future, I think it's worth going back to *AFL-CIO* because the connection to the -- the injury to the claimed wrongdoing, in my view, was much tighter than what we have here.

Moving on to traceability and redressability, they are often -- they often rise or fall together and can be addressed jointly. That comes from *Friends for Ferrell Parkway*, 282 F.3d, 323, Footnote 1.

Injuries are traceable, if, quote, caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the Court. That comes from *Ferrell* at 320.

And the redressability prong requires that it be likely, not merely speculative, that a favorable decision from the Court will remedy the plaintiffs' injury. Also from Page 30 of *Ferrell*, citing *Lujan*, L-U-J-A-N, 504 U.S. at 561.

Predictably, therefore, when the asserted injury arises from the government's allegedly unlawful regulation or lack of regulation, or -- of someone else, satisfying standing requirements will be substantially more difficult. That comes from *Frank Krasner*, K-R-A-S-N-E-R, *Enterprises Limited v. Montgomery County*, 401 F.3d 230, 234, 35, Fourth Circuit, 2005,

relying on *Lujan,* 405 U.S. at 562.

PEER cannot demonstrate their injuries are traceable to the OMB policy principally because PEER itself attributes the lion's share of the damage not to the OMB policy, but to the actions of the third parties who are not in this suit, the administration in its elimination of IGs and the deteriorating trust in the ones who remain. Accordingly, given the, quote, unfettered choices made by independent actors not before the courts, and whose exercise of discretion the courts cannot presume either to control or predict, and that comes from *Lujan* at 562, the claims are simply not traceable to the OMB policy sufficient to confer standing.

As for redressability, PEER cannot show elimination of the OMB policy will likely remedy their claimed injuries. That comes from *Ferrell* at 320. While having a fully-funded and independent CIGIE may at some point help restore diminished trust in IGs, it's equally likely to make no difference given the other facts that we now know to be true; the elimination of IGs, the installment of partisan IGs.

PEER can make the complaints to CIGIE, but it is speculative, at best, to conclude that a fully-funded council free of OMB influence would reduce IGs' partisanship and restore trust to the system. Accordingly, the Court cannot conclude that PEER's claimed injuries are traceable to OMB's policy to curtail CIGIE funding.

I do note, as a cf., *PETA v. Tabak,* 662 F. Supp. 3d, 581, 590. I had the pleasure of presiding over that case in which I did find standing based on PETA's claimed challenge to NIH's funding of grants. The defendants in that case had raised the argument that, well, the real source of the injury there was the grant recipients, not NIH's funding.

But contrary here, there was a much tighter connection between, as I put it, the two partners in the injury, which was NIH and the funding recipients. You could not have the injury without both of them, frankly, which is why I found that PETA, whose mission it is, is to protect animals, had sufficient standing to challenge whether NIH was following the proper policy in granting such funds while protecting the animals involved in the experiments behind the funded -- the funded experiments.

For these reasons, I find that PEER lacks standing, and because it lacks standing, venue is improper. I cite to you *Miller v. Albright,* 523 U.S. 420, 427, 1998, and *Dayton Area Chamber of Commerce V. Kennedy,* 147 F.4th, 626, 635, Sixth Circuit, 2025.

Where the plaintiffs sue an agency of the United States, venue lies, among other places, not relevant here, quote, where the plaintiff resides if no real property is involved in the action. That comes from 28 U.S.C. 1391(e)(1).

Only one plaintiff resides here, and that is PEER, and

because the Court dismisses PEER for lack of standing, and the plaintiff -- the plaintiffs cannot otherwise create venue where none exists, the Court must either dismiss or transfer the case in the interest of justice. And that's 28 U.S.C. 1406(a).

I've heard the parties on whether dismissal or transfer would be appropriate. You're in agreement. Dismissal without prejudice is appropriate. So that's what I will do.

So I grant the motion. I dismiss the complaint without prejudice.

If you choose to refile here, you can certainly indicate on the -- the filing that the case is related, if you want. And if you choose to file elsewhere, I wish you all the best.

I thank you for very, very well-done arguments. Really interesting case, and I wish you both the best.

And we'll -- we'll indicate by way of a paperless order that for the reasons set forth on the record, I grant the motion dismissed without prejudice. It was on jurisdictional grounds.

And that will be about it.

Is there anything else that we need to do today?

**MS. SCHELLENBERG:** No, Your Honor. Thank you.

**THE COURT:** Thank you.

**MR. SIRKOVICH:** Thank you.

**THE COURT:** All right. Thank you all.

**DEPUTY CLERK:** All rise. This Honorable Court now

stands adjourned.

(Proceedings were concluded at 11:40 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Paula J. Leeper, Federal Official Court Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 23rd day of June 2026.

*/S/ Paula J. Leeper*

______________________

Paula J. Leeper, RMR, CRR
Federal Official Reporter

**COURT REPORTER: [1]** 24/19
**DEPUTY CLERK: [3]** 2/5 3/9 68/25
**MR. BRESSLER: [1]** 3/17
**MR. SIRKOVICH: [28]** 3/20 34/1 34/3 34/18 35/3 35/7 35/10 36/1 36/19 36/22 37/1 37/11 37/17 38/16 38/24 40/1 40/4 40/21 40/25 41/13 42/15 42/21 44/4 45/15 46/10 46/22 46/25 68/23
**MS. SCHELLENBERG: [74]**
**MS. VICKERY: [1]** 3/19
**MS. WENTWORTH: [1]** 3/18
**THE COURT: [102]**

**$**

**$4 [1]** 53/6
**$4 million [1]** 53/6

**/**

**/s [1]** 70/15

**1**

**1,000 [1]** 58/17
**10 [1]** 58/22
**105 [2]** 57/25 58/8
**106 [1]** 58/16
**107 [2]** 24/13 59/8
**10:07 [1]** 1/12
**11 [2]** 60/19 63/1
**1100 [1]** 2/3
**115 [1]** 59/15
**119 [2]** 60/4 60/4
**11:40 [1]** 69/2
**12 [6]** 15/2 55/20 58/8 58/15 60/19 63/2
**120 [1]** 60/12
**121 [1]** 24/14
**13 [1]** 58/8
**1391 [2]** 55/13 67/24
**14 million [1]** 48/19
**1404 [1]** 4/22
**1406 [2]** 4/22 68/4
**14596 [1]** 1/21
**147 [1]** 67/19
**15 [1]** 18/18
**16 [6]** 9/19 58/21 59/9 62/20 62/25 63/4
**17 [12]** 1/12 8/14 13/12 18/14 18/17 25/9 43/6 50/18 53/12 53/20 53/22 59/17
**17th [1]** 51/22
**18 [1]** 64/3
**18th [4]** 34/21 47/7 47/13 53/5
**19 [2]** 55/12 64/3
**190 [1]** 56/4
**192 [1]** 55/23
**1976 [1]** 57/18
**1982 [1]** 57/11
**1991 [1]** 56/13
**1998 [1]** 67/18
**1999 [2]** 55/24 56/5

**2**

**20 [3]** 60/9 61/11 61/11
**200 [1]** 58/18
**20005 [1]** 2/3
**2002 [1]** 62/10
**20043 [1]** 1/18
**20044 [1]** 1/21
**2005 [2]** 56/9 65/25
**2008 [1]** 56/23
**2009 [4]** 55/22 56/22 59/17 64/21
**2010 [1]** 56/4
**2011 [1]** 59/18
**2012 [1]** 57/12
**202 [2]** 1/19 2/4
**2025 [8]** 50/18 51/19 51/22 52/19 53/13 53/22 64/10 67/20
**2026 [9]** 1/12 50/20 51/21 51/23 52/18 52/21 53/8 53/14 70/12
**22 million [1]** 48/16
**230 [1]** 65/25
**234 [1]** 65/25
**23rd [1]** 70/12
**24 [1]** 53/22
**26 [3]** 57/18 61/11 61/11
**2689 [1]** 1/22
**27 [1]** 43/12
**28 [4]** 55/13 67/24 68/4 70/6
**282 [3]** 62/5 62/10 65/10
**2d [1]** 56/9

**3**

**30 [4]** 50/9 50/20 53/8 65/18
**30 percent [1]** 60/14
**300 [1]** 60/9
**30th [4]** 36/12 47/19 47/20 48/3
**31 [1]** 51/9
**315 [1]** 62/10
**320 [2]** 65/15 66/15
**322 [1]** 62/5
**323 [1]** 65/11
**33 [1]** 64/3
**33-1 [2]** 54/6 61/11
**337 [1]** 55/22
**34553 [1]** 1/18
**347 [1]** 55/22
**35 [2]** 51/12 65/25
**353-5525 [1]** 2/4
**359 [1]** 56/3
**362 [1]** 56/3
**363 [1]** 57/11
**367 F. Supp. 2d [1]** 56/9
**379 [1]** 57/11
**3d [2]** 64/9 67/1

**4**

**40 [3]** 51/16 57/18 60/9
**40 percent [1]** 48/19
**401 [1]** 65/25
**405 [1]** 66/1
**414 [1]** 51/2
**4164 [1]** 3/10
**417 [1]** 55/23
**419 [1]** 56/21
**420 [1]** 67/18
**422 [1]** 55/23
**423 [1]** 56/21
**424 [2]** 51/8 52/6
**426 [1]** 57/18
**427 [1]** 67/18
**43 [3]** 34/16 35/17 53/5
**43-day [1]** 63/10
**448-9090 [1]** 1/19
**455 [1]** 57/11
**46 [1]** 51/16
**48 [3]** 19/19 27/22 44/8

**5**

**50 [1]** 53/3
**504 [1]** 65/19
**523 [1]** 67/18
**53 [1]** 53/3
**544 [1]** 57/1
**5525 [1]** 2/4
**554 U.S. 724 [1]** 56/23
**555 [1]** 55/21
**56 [1]** 64/9
**561 [1]** 65/19
**562 [2]** 66/1 66/11
**57 [1]** 53/4
**575 [1]** 56/21
**581 [1]** 67/1
**585 [1]** 1/22
**59 [1]** 62/20
**590 [1]** 67/2

**6**

**60 [1]** 62/20
**609 [1]** 56/3
**626 [1]** 67/19
**63 [2]** 18/18 59/16
**635 [1]** 67/19
**648 [1]** 56/5
**654 [2]** 56/5 56/8
**662 [1]** 67/1
**668 [1]** 57/12
**67 [2]** 52/11 64/14
**675 [2]** 57/12 57/17
**68 [1]** 52/15
**6th [1]** 52/19

**7**

**70 [1]** 51/2
**703 [2]** 57/12 57/16
**724 [1]** 56/23
**733 [1]** 56/23
**734 [1]** 57/1
**75 [2]** 64/8 64/14
**753 [1]** 70/6
**76 [1]** 52/18
**765 [1]** 56/13
**768 [1]** 56/13
**778 [1]** 64/9
**79 [1]** 53/3
**792 [1]** 56/9
**799 [1]** 56/9

**8**

**83 [1]** 53/8
**86 [2]** 30/1 30/2
**8:25-cv-04164-PX [1]** 1/7

**9**

**90-day [1]** 35/24
**9090 [1]** 1/19
**944-2689 [1]** 1/22
**945 [1]** 56/12

**A**

**a.m [2]** 1/12 69/2
**ability [2]** 10/4 33/1
**able [6]** 14/15 18/15 21/23 37/18 41/9 41/11
**about the [1]** 24/17
**above [3]** 38/7 61/23 70/9
**above-entitled [1]** 70/9
**absent [2]** 54/15 62/1
**abuse [2]** 51/14 54/10
**accept [2]** 25/17 34/19
**accepting [2]** 18/10 36/8
**access [7]** 20/24 25/4 44/15 62/13 62/16 63/12 64/12
**accessible [1]** 62/19
**accomplish [1]** 57/22
**according [10]** 5/14 5/20 8/15 9/5 34/14 34/15 53/17 58/13 59/16 64/21
**Accordingly [5]** 53/12 56/15 61/5 66/7 66/23
**account [1]** 13/15
**accountability [2]** 50/12 51/12
**accountable [1]** 10/6
**acronyms [1]** 20/8
**across [1]** 51/4
**act [8]** 31/24 33/4 33/4 34/13 40/8 52/14 52/23 54/17
**acted [2]** 25/23 28/16
**acting [1]** 31/19
**action [14]** 3/10 5/13 5/13 34/8 34/19 34/21 35/6 38/12 38/22 38/22 56/18 63/25 64/2 67/24
**actions [8]** 17/12 25/22 57/14 58/5 61/9 61/10 65/14 66/1
**active [1]** 34/24
**activities [4]** 53/1 57/9 58/3 59/19
**actors [2]** 17/6 66/8
**acts [1]** 61/15
**actual [5]** 22/18 29/19 37/17 43/20 56/17
**actually [3]** 10/16 43/13 43/17
**add [4]** 25/7 40/18 42/16 48/14
**added [1]** 46/16
**addition [1]** 44/13
**additional [1]** 37/2
**address [7]** 4/19 4/19 5/5 5/25 17/17 40/19 47/4
**addressed [1]** 65/9
**addressing [1]** 23/21
**adjourned [1]** 69/1
**administration [10]** 16/21 25/16 35/20 53/16 53/20 53/21 54/1 54/8 60/14 66/6
**administration's [5]** 8/5 8/18 10/3 61/1 61/24
**Administrative [1]** 54/17
**admission [2]** 10/8 10/10
**advance [2]** 10/4 58/3
**adverse [2]** 38/22 38/22
**advisory [1]** 45/7
**advocacy [1]** 58/2
**affairs [1]** 16/9
**affect [1]** 64/25
**affects [1]** 18/5
**affidavit [8]** 6/23 11/18 54/6 54/12 58/24 60/18 62/19 63/1
**AFL [6]** 20/2 63/21 63/23 64/4 65/3 65/4
**AFL-CIO [6]** 20/2 63/21 63/23 64/4 65/3 65/4
**after [7]** 27/4 35/1 37/13 37/24 48/10 50/17 52/9
**again [33]** 6/3 6/16 8/7 9/25 10/1 10/22 11/22 14/15 14/25 15/22 15/23 16/9 18/25 19/3 19/7 20/19 22/9 23/3 23/11 24/1 28/18 29/14 35/16 35/21 36/13 36/16 37/9 37/9 38/14 45/19 48/4 61/13 63/11
**against [2]** 51/15 53/2
**age [1]** 49/16
**agencies [7]** 8/6 10/5 31/23 47/18 51/4 51/15 60/15
**agency [14]** 20/16 31/11 32/10 33/14 33/16 34/8 34/19 34/21 52/23 54/1 54/3 58/7 61/14 67/21
**ago [8]** 8/14 13/12 13/13 18/14 18/17 18/18 19/21 59/18
**agree [5]** 12/21 12/22 34/20 40/2 45/10
**agreement [2]** 49/13 68/6
**Agriculture [1]** 54/5
**ahead [2]** 30/19 48/4
**aid [1]** 50/25
**AIDED [1]** 1/25
**aids [1]** 61/17
**aimed [1]** 54/9
**al [4]** 1/5 1/8 3/11 3/12
**Albright [1]** 67/18
**all [45]** 3/3 3/6 3/22 7/7 7/15 8/5 8/6 10/2 10/3 14/9 15/1 19/4 21/1 21/5 24/9 25/6 25/17 26/22 26/24 31/21 31/25 34/2 34/8 35/10 36/8 36/19 38/9 43/3 43/22 44/1 45/16 45/19 46/21 46/25 48/10 48/14 50/5 52/25 59/11 60/15 62/12 68/12 68/24 68/24 68/25
**allegation [5]** 21/2 24/24 28/17 33/5 33/11
**allegations [5]** 23/12 24/15 25/14 34/20 38/19
**allege [4]** 44/25 48/21 54/14 64/20
**alleged [8]** 5/25 10/9 13/16 17/7 22/22 29/15 31/12 64/22
**allegedly [1]** 65/21
**alleges [1]** 51/19
**alleging [6]** 17/11 17/11 17/22 18/10 26/4 47/13
**allowing [1]** 51/13
**allows [1]** 4/22
**alone [4]** 45/3 57/13 62/24 63/18
**alongside [1]** 53/15
**already [4]** 14/4 34/10 42/23 45/20
**also [31]** 2/5 4/19 7/12 7/15 10/15 12/8 12/16 15/21 16/5 16/8 23/22 27/20 29/4 30/7 37/2 40/22 41/16 48/14 49/22 51/15 54/8 54/13 54/19 55/21 56/22 57/11 58/8 59/1 60/12 63/2 65/18
**alternative [1]** 45/8
**Although [3]** 22/7 45/24 51/18
**always [1]** 3/23
**am [9]** 4/18 4/23 4/25 11/1 23/11 26/16 26/17 44/24 45/5
**ambiguous [1]** 44/20
**amend [2]** 28/18 44/1
**amendment [1]** 31/8
**American [1]** 55/23
**amici [1]** 9/24
**among [1]** 67/22
**amorphous [1]** 18/19
**amount [2]** 39/21 47/25
**amounts [1]** 54/16
**AMY [2]** 1/17 3/19
**analogizing [1]** 63/23
**analyzed [1]** 35/8
**ancillary [1]** 41/4
**animals [2]** 67/11 67/13
**announced [4]** 28/11 29/4 29/6 52/20
**annual [1]** 37/1
**annually [1]** 36/25
**anomaly [1]** 27/23
**another [8]** 13/6 14/15 16/12 26/19 28/17 34/23 38/3 45/17
**answer [2]** 28/19 36/21
**answers [1]** 26/1
**Anti [5]** 31/23 33/4 40/8 52/14 52/23
**Anti-Deficiency [5]** 31/23 33/4 40/8 52/14 52/23
**anticipated [1]** 9/7
**Anybody [1]** 21/16
**anything [7]** 10/3 12/19 21/1 23/20 40/18 40/19 68/20
**Anyway [1]** 4/23

## A


**APA [2]** 31/1 31/17
**apparent [1]** 46/14
**appear [1]** 58/13
**appearance [1]** 43/14
**APPEARANCES [1]** 1/14
**apple [1]** 45/23
**applicability [1]** 32/4
**appointed [1]** 53/24
**apportion [17]** 5/20 27/24 28/7 31/24 32/21 32/25 33/1 33/7 33/17 34/16 40/17 50/17 53/15 54/20 54/24 55/2 55/4
**apportioned [10]** 36/15 36/20 47/25 48/18 50/19 51/18 51/20 51/22 52/16 53/6
**apportioning [1]** 39/20
**apportionment [12]** 32/10 36/9 36/22 37/2 37/24 38/3 39/14 39/20 47/6 47/14 52/21 54/15
**apportionments [7]** 5/7 27/17 30/22 37/2 40/6 48/11 48/14
**apportions [3]** 32/15 52/14 52/24
**appreciate [1]** 46/24
**approaches [1]** 50/24
**appropriate [5]** 31/15 37/19 37/23 68/6 68/7
**appropriated [2]** 55/3 55/5
**appropriates [1]** 52/9
**appropriation [1]** 28/1
**appropriations [2]** 52/1 52/13
**Area [1]** 67/18
**areas [2]** 22/17 24/3
**aren't [4]** 17/19 22/24 31/25 42/23
**argue [1]** 27/15
**arguing [3]** 4/24 32/24 33/1
**argument [9]** 5/12 6/17 15/24 27/19 29/16 35/17 40/12 64/3 67/5
**arguments [5]** 4/14 26/9 46/2 47/9 68/13
**arises [1]** 65/20
**arising [1]** 59/24
**around [4]** 24/13 32/20 47/22 48/18
**array [2]** 51/4 58/2
**arrival [1]** 5/18
**Article [8]** 5/10 5/23 5/25 39/12 42/21 42/23 44/21 55/17
**Article III [1]** 39/12
**articulated [1]** 8/3
**ascertain [1]** 56/10
**ask [3]** 5/5 26/6 26/16
**asked [3]** 17/13 28/12 54/25
**asking [2]** 19/22 39/7
**assault [4]** 53/16 61/2 61/24 62/2
**asserted [1]** 65/20
**asserts [1]** 62/14
**assess [1]** 57/19
**assessment [1]** 9/17
**assisting [1]** 58/4
**Associates [1]** 56/2
**association [2]** 13/3 21/9
**assume [7]** 5/11 6/16 6/16 15/24 40/12 40/14 63/10
**assumed [2]** 29/15 29/17
**assure [1]** 31/23
**atmosphere [1]** 44/19
**attack [2]** 8/18 18/3
**attacks [2]** 8/22 15/20
**attempt [1]** 46/1
**attempting [2]** 20/12 54/9
**attempts [1]** 40/7
**attenuated [1]** 42/13
**attorney [1]** 13/21
**attorney-client [1]** 13/21
**attributes [3]** 60/10 61/12 66/3
**authorities [1]** 40/7
**authority [8]** 31/11 32/10 32/13 32/14 32/25 33/14 39/14 46/7
**available [4]** 7/20 10/11 22/24 35/14
**avenue [10]** 7/15 10/11 11/23 13/7 13/17 16/6 19/10 20/1 25/7 62/23
**avenues [3]** 35/13 44/15 44/16
**average [1]** 58/18
**averments [1]** 63/13
**averred [1]** 14/12
**avers [1]** 54/23
**avoid [2]** 33/11 33/13
**away [1]** 21/25


## B


**back [18]** 16/6 18/13 19/3 21/19 21/22 22/8 26/22 26/24 29/11 32/12 35/12 38/23 39/9 44/9 47/5 47/24 57/4 65/4
**Bartlett [1]** 56/21
**based [11]** 6/22 17/15 17/23 27/13 29/11 31/10 31/11 32/4 32/4 60/21 67/3
**basically [6]** 10/23 23/9 31/21 32/11 32/20 33/15
**basis [2]** 55/9 63/18
**bears [1]** 56/1
**because [67]** 4/9 4/14 4/21 5/12 7/19 8/24 9/6 9/6 11/8 12/3 12/18 13/4 13/19 17/16 18/13 19/5 19/24 20/20 21/24 22/3 22/6 22/9 22/11 22/23 23/4 23/10 23/16 24/25 25/4 25/22 26/2 26/13 26/16 28/4 28/22 29/10 29/14 29/15 31/21 38/13 38/23 40/4 40/13 41/19 42/7 43/9 45/4 45/21 46/6 46/14 47/9 47/12 48/7 48/12 49/14 49/21 49/23 52/22 53/13 55/9 60/3 61/6 63/22 65/5 66/3 67/17 68/1
**becoming [1]** 60/7
**before [17]** 1/11 3/9 3/12 28/10 35/3 35/25 36/10 38/24 38/25 40/10 42/2 42/7 48/3 52/19 58/13 65/14 66/8
**begin [2]** 15/6 27/11
**beginning [1]** 40/5
**behalf [10]** 1/15 2/1 3/15 7/10 7/11 8/12 8/12 8/13 9/23 14/24
**behind [1]** 67/14
**being [6]** 10/10 15/17 35/11 41/1 41/2 41/11
**belief [1]** 43/13
**believe [5]** 17/3 22/21 31/2 58/23 62/1
**believes [1]** 9/13
**belongs [1]** 46/4
**bench [1]** 49/24
**besides [1]** 44/18
**best [4]** 64/19 66/21 68/12 68/14
**better [1]** 5/5
**between [3]** 12/10 60/20 67/8
**beyond [1]** 22/22
**big [1]** 8/4
**Bishop [1]** 56/21
**bit [4]** 29/16 31/2 31/5 41/18
**bite [1]** 45/22
**bless [1]** 29/20
**block [1]** 49/25
**board [6]** 9/20 22/9 26/23 26/24 38/8 58/22
**boasts [1]** 58/21
**body [3]** 38/21 42/9 42/9
**both [6]** 7/11 22/4 49/12 49/17 67/10 68/14
**Box [2]** 1/18 1/21
**break [2]** 6/7 27/2
**BRESLER [2]** 1/16 3/17
**brief [1]** 27/6
**briefing [3]** 27/21 43/15 43/19
**briefs [1]** 9/24
**bring [3]** 12/19 37/18 37/23
**brought [4]** 9/22 34/23 36/10 36/11
**buckets [2]** 25/2 25/13
**budget [5]** 1/8 3/12 48/16 48/17 50/6
**budgetary [1]** 57/16
**bump [1]** 24/22
**burden [2]** 56/1 63/15
**Bureau [1]** 51/7
**business [2]** 37/9 37/10


## C


**call [4]** 6/18 50/17 51/3 55/1
**called [2]** 3/2 52/4
**calling [1]** 50/16
**came [3]** 30/16 37/14 39/8
**campaign [1]** 54/8
**can't [13]** 10/16 12/18 14/1 18/25 20/8 23/7 24/11 32/22 32/22 37/25 38/23 42/2 47/19
**cannot [11]** 13/19 43/9 47/19 61/5 62/24 63/6 66/2 66/9 66/13 66/23 68/2
**capable [2]** 5/13 43/3
**careful [2]** 11/2 45/6
**carried [1]** 63/15
**carrying [1]** 40/9
**case [25]** 1/6 4/3 4/6 20/3 20/18 26/18 33/13 36/2 38/14 41/3 42/5 45/9 45/20 46/4 49/24 55/10 55/15 55/19 56/11 63/23 67/2 67/4 68/3 68/11 68/14
**caseload [1]** 60/25
**cases [1]** 36/2
**casing [1]** 34/11
**cause [1]** 35/6
**caused [4]** 17/11 57/7 59/23 65/12
**causing [2]** 17/8 57/9
**ceased [2]** 39/3 52/25
**central [1]** 58/11
**certainly [12]** 4/16 10/7 10/12 16/24 22/10 31/16 58/20 59/3 61/17 61/21 65/2 68/10
**CERTIFICATE [1]** 69/3
**certify [1]** 70/6
**cessation [1]** 39/1
**cf [1]** 67/1
**CFPB [7]** 20/5 20/11 20/12 20/24 64/11 64/17 64/18
**CFPB's [1]** 64/14
**challenge [2]** 67/3 67/12
**challenged [5]** 6/12 39/2 39/3 56/18 65/13
**challenges [1]** 55/6
**challenging [1]** 32/3
**Chamber [1]** 67/19
**CHAMBERS [1]** 62/8
**change [3]** 12/25 31/6 41/23
**changed [2]** 19/8 47/23
**characterizing [1]** 47/6
**check [1]** 8/25
**choice [2]** 4/10 33/6
**choices [4]** 17/16 29/11 57/16 66/8
**choose [2]** 68/10 68/12
**CHRISTINA [2]** 1/20 3/18
**Christopher [2]** 2/5 3/21
**chunks [4]** 12/24 32/22 32/25 35/24
**CIGIE [111]**
**CIGIE's [21]** 6/18 17/15 21/3 34/5 35/11 35/19 36/24 42/17 43/10 51/10 52/14 52/16 52/16 53/4 53/6 54/21 59/4 60/20 61/1 63/7 64/23
**CIO [6]** 20/2 63/21 63/23 64/4 65/3 65/4
**Circuit [11]** 17/4 55/22 55/24 56/4 56/5 56/13 56/22 57/12 62/10 65/25 67/20
**citation [2]** 51/8 57/5
**citations [2]** 50/4 50/5
**cite [11]** 36/2 55/11 55/19 56/2 56/8 62/4 62/5 62/6 63/23 64/9 67/17
**citing [3]** 30/4 56/11 65/19
**Citizens [1]** 1/20
**Civil [4]** 1/6 2/2 3/10 55/19
**claim [5]** 18/12 31/9 32/9 50/9 56/25
**claimed [5]** 63/18 65/5 66/14 66/24 67/3
**claiming [1]** 25/19
**claims [7]** 31/17 51/15 55/7 59/5 59/22 59/24 66/11
**clear [3]** 28/15 31/6 46/17
**clearinghouse [5]** 11/10 11/14 13/24 21/7 43/24
**client [7]** 13/2 13/21 38/10 60/2 60/6 62/15 64/1
**clients [8]** 7/20 13/8 14/18 15/10 20/13 24/25 43/9 62/18
**clients' [2]** 59/25 64/25
**close [1]** 60/14
**closed [4]** 7/14 7/15 10/12 19/19
**closely [1]** 60/16
**closer [2]** 21/11 41/14
**cloud [1]** 26/20
**co [1]** 27/1
**co-counsel [1]** 27/1
**coffers [1]** 54/21
**cognizable [1]** 56/24
**Coleman [1]** 57/11
**colleague [1]** 23/22
**collect [1]** 7/13
**collectively [1]** 50/10
**collects [1]** 52/9
**Columbia [2]** 26/14 64/10
**combined [1]** 60/17
**come [3]** 36/11 36/14 38/23
**comes [14]** 3/12 32/20 57/10 57/25 58/22 59/7 59/15 60/4 65/10 65/14 65/23 66/10 66/15 67/24
**comfortable [2]** 5/3 34/2
**coming [2]** 37/25 38/4
**Commerce [2]** 54/4 67/19
**committee [2]** 7/5 21/16
**community [1]** 14/21
**Company [1]** 56/12
**compel [1]** 54/20
**compendium [1]** 14/3
**competent [1]** 51/11
**complaint [84]**
**complaint's [1]** 34/19
**complaints [41]** 7/11 8/11 9/6 9/10 11/4 14/7 14/23 15/2 15/3 15/8 15/16 18/17 20/6 21/1 21/7 21/24 34/25 37/19 43/9 51/14 53/2 53/2 58/7 58/15 59/6 59/10 60/2 60/21 61/6 61/12 61/19 62/3 62/17 62/18 62/21 62/23 62/25 64/1 64/12 65/1 66/20
**completely [3]** 11/23 37/7 38/9
**compliance [1]** 31/22
**complimented [1]** 28/21
**complying [1]** 31/23
**computer [4]** 1/25 3/23 3/24 3/24
**COMPUTER-AIDED [1]** 1/25
**concern [4]** 5/5 5/6 19/1 46/3
**concerned [2]** 4/18 24/8
**concerning [1]** 28/21
**conclude [5]** 60/25 61/5 61/22 66/21 66/24
**concluded [2]** 45/20 69/2
**concludes [2]** 55/16 63/15
**conclusory [4]** 13/25 22/8 22/19 22/22
**concrete [11]** 10/1 10/23 16/1 16/5 44/21 56/16 57/8 61/21 63/14 63/16 65/1
**conduct [3]** 39/2 39/3 65/13
**confer [6]** 26/7 27/1 36/3 57/14 64/2 66/12
**Conference [1]** 70/10
**confirmed [1]** 53/23
**conformance [1]** 70/10
**confused [1]** 11/9
**Congress [15]** 10/20 12/10 12/11 18/1 18/3 25/3 25/24 30/13 42/18 43/2 47/17 52/4 52/9 61/10 61/20
**Congress' [1]** 32/5
**congressional [3]** 28/6 48/17 62/3
**congressionally [1]** 33/16
**congressionally-created [1]** 33/16
**conjectural [1]** 56/17
**conjecture [1]** 61/25
**connection [4]** 39/22 60/20 65/5 67/7
**consequent [2]** 57/9 62/2
**consider [4]** 4/22 42/12 45/13 56/10
**consideration [1]** 29/12
**considered [2]** 11/25 41/5
**considering [1]** 43/2
**considers [1]** 56/6
**constitutes [1]** 34/18
**consumer [1]** 20/10
**contemplates [1]** 38/12
**contends [3]** 59/20 61/8 62/12
**context [1]** 13/7
**continue [3]** 7/18 27/21 27/23
**Continued [1]** 1/23
**continues [1]** 40/11
**continuing [2]** 36/12 47/18
**contrary [2]** 32/5 67/7
**contrast [1]** 60/20
**control [2]** 33/4 66/10
**controversy [1]** 45/21
**conversation [3]** 23/17 39/24 40/22
**conveyed [3]** 29/2 29/21 30/11
**convince [1]** 4/7
**core [2]** 41/5 41/8
**Corp [1]** 57/11
**corporate [1]** 58/20
**correct [7]** 25/6 27/25 28/3 28/8 28/8 34/1 70/7
**corruption [2]** 28/14 30/16
**council [6]** 50/15 50/17 50/22 52/5 53/10 66/21
**counsel [9]** 3/14 4/1 7/20 24/19 26/7 27/1 43/9 47/5 51/6
**counseling [5]** 10/17 24/25 58/10 60/6 62/15
**count [4]** 31/12 54/17 54/22 54/24
**Counts [1]** 54/18
**County [1]** 65/25
**couple [4]** 8/21 27/6 31/25 36/1
**course [6]** 8/11 48/17 53/5 57/22 59/2 59/19
**court [39]** 1/1 1/12 3/2 3/4 3/10 3/13 4/6 23/7 31/3 34/4 41/22 43/17 45/2 45/7 45/11 45/17 45/18 54/19 54/20 54/25 55/8 55/16 56/6 59/20 60/24 61/5 61/22 62/8 63/14 63/17 64/4 65/14 65/18 66/23 68/1 68/3 68/25 70/4 70/5
**court's [3]** 39/2 55/18 55/25
**courts [4]** 38/13 39/12 66/9 66/9
**covered [1]** 44/23
**create [1]** 68/2
**created [4]** 5/22 21/4 33/16 50/22
**crippled [1]** 52/24
**critical [2]** 47/8 62/15
**Critically [1]** 64/16
**CRR [1]** 70/16
**curious [1]** 33/10
**current [4]** 15/11 16/8 49/15 58/4
**currently [3]** 4/6 9/13 64/18

**C**

**curtail [1]** 66/25
**customer [1]** 64/11
**customer-related [1]** 64/11
**customers [1]** 64/7
**cut [1]** 15/25
**cuts [2]** 10/4 55/18
**cv [1]** 1/7

**D**

**D.C [2]** 14/18 46/4
**damage [3]** 16/2 16/4 66/4
**Damocles [3]** 12/15 16/10 35/19
**dangling [2]** 12/15 16/9
**date [2]** 48/3 60/8
**dated [2]** 13/11 70/12
**Davis [4]** 56/8 56/22 57/1 57/5
**day [4]** 35/24 37/16 63/10 70/12
**days [8]** 19/19 27/22 34/16 35/17 44/8 47/17 53/5 53/21
**Dayton [1]** 67/18
**DC [3]** 1/18 1/21 2/3
**DDC [1]** 45/19
**de [1]** 59/13
**dead [1]** 5/18
**deadline [1]** 47/21
**deal [1]** 25/13
**December [4]** 28/10 39/5 51/22 53/12
**December 17 [1]** 53/12
**December 17th [1]** 51/22
**decide [2]** 23/25 33/19
**decimated [1]** 16/25
**decision [10]** 16/21 17/14 28/9 29/8 50/14 53/9 53/25 54/15 56/20 65/17
**decisions [1]** 52/20
**declaration [12]** 5/16 9/13 22/5 23/1 23/13 23/23 24/4 38/2 38/11 43/6 43/19 58/9
**declare [1]** 55/1
**defang [1]** 61/18
**defend [1]** 15/17
**defendant [7]** 39/1 39/3 50/6 56/19 57/15 64/12 65/13
**defendants [5]** 1/9 2/1 3/20 50/10 67/4
**defendants' [4]** 27/12 48/11 64/2 64/17
**defending [1]** 58/11
**defends [1]** 7/12
**Deficiency [5]** 31/23 33/4 40/8 52/14 52/23
**definitively [1]** 36/14
**defund [6]** 17/15 31/11 33/13 47/16 48/4 50/14
**defunded [5]** 6/3 7/4 7/5 27/22 28/12
**defunding [7]** 8/17 11/23 12/7 28/12 35/21 43/7 43/8
**degradation [1]** 13/16
**delay [1]** 49/23
**Democracy [1]** 1/17
**demonstrable [1]** 57/8
**demonstrate [3]** 6/12 59/1 66/2
**demonstrated [2]** 59/13 62/22
**denied [1]** 44/6
**Department [7]** 2/2 20/2 54/3 54/4 54/4 54/5 54/5
**dependability [1]** 64/24
**dependent [1]** 39/18
**depends [1]** 55/9
**deprivation [1]** 62/23
**deprive [1]** 35/5
**deprived [1]** 63/7
**depriving [1]** 62/13
**derivative [1]** 16/18
**describe [1]** 44/18
**described [1]** 43/16
**deserves [1]** 60/5
**designed [1]** 28/23
**destabilized [1]** 53/10
**destroy [2]** 32/11 33/16
**detail [1]** 63/8
**details [1]** 23/3
**deteriorating [3]** 60/3 60/11 66/6
**develop [1]** 51/10
**developing [1]** 50/24
**developments [1]** 49/1
**devoted [1]** 58/17
**dictate [1]** 34/8
**difference [1]** 66/17
**different [4]** 5/10 40/19 40/24 41/24
**differently [2]** 33/7 33/7
**difficult [3]** 7/24 8/1 65/23
**difficulties [1]** 64/7
**diminished [1]** 66/16
**direct [14]** 9/4 14/19 18/12 18/13 20/7 20/14 20/20 20/21 55/2 55/4 59/1 59/3 64/6 64/11
**directed [1]** 52/4
**directly [9]** 8/6 9/9 9/23 10/18 17/17 20/12 21/8 21/12 64/16
**director [3]** 50/7 50/14 54/6
**Director's [1]** 58/9
**directors [1]** 9/20
**disaggregate [1]** 18/9
**disagree [4]** 18/6 34/18 40/14 45/12
**disconcerting [1]** 36/3
**discretion [1]** 66/9
**discuss [4]** 22/24 23/1 26/17 26/17
**dismiss [18]** 24/15 26/11 26/12 26/23 26/24 27/13 31/13 31/15 38/14 38/17 45/2 45/25 46/12 50/7 55/6 63/17 68/3 68/8
**dismissal [11]** 4/11 4/21 22/9 34/9 46/19 46/20 49/4 49/7 49/9 68/5 68/6
**dismissal-without-prejudice [1]** 49/9
**dismissed [2]** 55/15 68/17
**dismisses [1]** 68/1
**dismissing [1]** 46/13
**distinct [1]** 64/5
**distinguish [1]** 63/21
**district [13]** 1/1 1/1 1/12 3/3 3/4 24/1 26/14 46/9 55/9 56/9 64/10 70/5 70/5
**distrust [6]** 60/1 60/18 60/22 61/13 61/14 61/17
**diversion [3]** 25/3 61/22 65/3
**divert [1]** 7/17
**DIVISION [2]** 1/2 2/2
**do [61]** 4/20 6/24 8/16 9/9 10/13 10/16 12/19 13/12 15/17 15/21 16/11 18/1 18/25 22/24 23/15 25/13 26/3 26/8 26/10 26/11 26/11 26/13 26/22 27/3 27/4 28/15 31/5 31/6 32/13 32/19 32/22 33/8 34/21 34/25 37/8 37/9 39/7 39/15 40/7 40/11 40/13 40/18 41/22 42/2 42/20 43/17 45/7 45/12 45/19 48/1 48/3 48/6 48/7 49/19 49/23 51/24 67/1 68/7 68/20 70/6
**document [1]** 30/4
**DOGE [2]** 20/11 20/23
**DOGE's [1]** 64/12
**doing [17]** 12/9 15/9 15/12 18/4 20/23 21/3 31/24 32/23 33/19 35/4 35/23 38/23 39/4 40/10 40/17 44/19 48/1
**DOJ [1]** 2/5
**Donald [1]** 53/22
**doors [1]** 6/18
**doubt [1]** 58/3
**down [5]** 6/7 10/15 36/13 52/25 62/22
**downstream [1]** 16/23
**drain [1]** 57/9
**drawing [3]** 22/9 26/23 26/24
**dubious [1]** 44/12
**due [1]** 6/5
**dues [1]** 52/8
**during [1]** 34/24
**duty [1]** 33/3
**dynamic [1]** 41/23

**E**

**each [3]** 52/17 56/25 56/25
**early [1]** 45/9
**Eastern [1]** 57/17
**ECF [6]** 50/9 50/20 51/8 55/11 61/10 64/3
**education [2]** 51/11 62/16
**Edwards [1]** 56/4
**effect [6]** 5/17 16/7 16/8 16/10 38/11 43/20
**effectively [1]** 52/12
**effectiveness [1]** 50/23
**effectual [1]** 43/18
**Efficiency [1]** 50/16
**efforts [2]** 58/18 62/16
**EITAN [2]** 2/2 3/20
**either [3]** 35/19 66/10 68/3
**elimination [3]** 66/6 66/13 66/18
**else [6]** 11/19 16/23 40/6 45/20 65/22 68/20
**elsewhere [1]** 68/12
**employee [1]** 58/4
**employees [5]** 1/4 3/10 7/9 9/20 57/24
**Employes [1]** 50/11
**enabled [1]** 5/21
**enabling [1]** 42/18
**end [7]** 36/11 47/20 50/15 51/18 60/1 61/25 62/1
**Energy [1]** 54/4
**enforce [2]** 31/22 31/22
**enforcement [1]** 55/1
**engaged [1]** 64/16
**engagement [2]** 59/2 59/3
**engages [1]** 58/2
**engaging [1]** 5/18
**enhanced [1]** 24/25
**enjoin [2]** 31/4 54/25
**enough [5]** 10/25 11/24 18/7 23/15 40/15
**ensure [1]** 25/24
**Enterprises [1]** 65/24
**enters [1]** 43/17
**entire [1]** 27/12
**entirely [1]** 63/24
**entirety [1]** 44/24
**entitle [1]** 44/11
**entitled [4]** 23/9 39/21 45/22 70/9
**environment [6]** 7/9 9/23 12/2 13/16 57/24 58/6
**environmental [7]** 1/4 3/11 14/21 41/2 50/11 54/3 58/3
**envisions [1]** 39/12
**EPA [1]** 9/24
**equally [1]** 66/17
**equivalent [1]** 64/18
**err [1]** 46/8
**escape [1]** 39/2
**especially [4]** 41/3 45/8 46/8 62/25
**ESQUIRE [6]** 1/16 1/16 1/17 1/20 2/2 2/5
**essential [1]** 21/23
**essentially [1]** 27/13
**establish [1]** 52/4
**establishing [1]** 56/1
**establishment [1]** 50/25
**estimates [1]** 58/17
**et [4]** 1/5 1/8 3/11 3/12
**Ethics [2]** 1/20 51/7
**Evans [1]** 56/2
**even [18]** 6/7 9/18 10/17 13/17 13/23 14/20 16/21 23/7 25/11 34/19 36/2 36/8 39/4 41/5 42/1 59/10 63/4 63/10
**event [5]** 4/14 4/19 28/18 31/6 31/7
**events [3]** 27/15 28/9 36/2
**eventually [1]** 51/18
**ever [3]** 21/23 26/1 38/25
**every [4]** 32/15 54/1 54/1 63/4
**everybody [1]** 44/9
**everyone [1]** 3/6
**everything [4]** 4/2 14/4 16/23 42/7
**evidence [16]** 11/17 11/19 13/22 22/18 23/14 23/16 24/2 27/16 27/17 27/17 30/23 36/6 48/11 56/10 58/13 61/22
**ex [1]** 55/21
**exactly [4]** 37/16 40/1 41/7 48/6
**examples [1]** 21/11
**except [1]** 52/18
**exception [1]** 41/1
**exclusion [1]** 4/14
**Excuse [1]** 49/7
**executive [3]** 47/18 51/4 58/9
**exercise [1]** 66/9
**exist [5]** 27/14 27/18 27/19 47/14 47/15
**exists [1]** 68/3
**expectation [1]** 37/6
**expected [2]** 64/12 64/17
**expend [2]** 59/25 61/8
**expenses [1]** 53/7
**experiencing [1]** 64/7
**experiments [2]** 67/14 67/15
**exposing [1]** 58/5
**expressed [1]** 34/11
**extent [2]** 57/21 63/9
**extraordinary [1]** 31/19
**extrinsic [1]** 56/10

**F**

**F-E-C [1]** 56/22
**F. [1]** 56/9
**F.2d [1]** 56/13
**F.3d [10]** 55/22 55/23 56/3 56/4 56/21 57/12 57/17 62/5 65/11 65/25
**F.4th [1]** 67/19
**F3d [1]** 62/10
**face [3]** 6/3 7/4 35/20
**facing [1]** 6/5
**fact [11]** 5/8 12/9 19/3 21/22 25/22 27/18 27/22 31/10 35/22 47/14 56/16
**facts [18]** 7/22 7/23 9/13 9/16 10/2 10/21 13/15 13/20 13/23 23/9 23/10 24/13 29/15 36/8 49/10 49/17 56/7 66/18
**factual [3]** 20/25 24/15 49/1
**failure [2]** 50/9 63/25
**fair [4]** 11/11 11/18 11/20 24/7
**fairly [1]** 56/18
**fairness [3]** 7/25 22/12 35/24
**faith [4]** 22/5 38/8 43/9 64/1
**fall [1]** 65/9
**far [2]** 40/22 41/13
**favor [1]** 35/22
**favorable [7]** 5/15 8/8 18/11 35/17 53/18 56/19 65/17
**favorably [1]** 56/7
**fear [1]** 54/8
**FEC [1]** 56/22
**Federal [3]** 51/7 70/4 70/17
**feel [1]** 41/20
**fellows [1]** 9/20
**Ferrell [7]** 62/4 62/6 62/9 65/10 65/15 65/19 66/15
**few [1]** 47/17
**figure [1]** 18/11
**file [24]** 9/24 10/13 11/3 15/10 18/16 19/9 20/6 20/20 20/21 21/16 21/23 22/14 23/22 37/15 37/19 43/9 44/17 58/7 58/15 62/17 62/18 62/22 64/1 68/12
**filed [34]** 8/11 8/13 8/14 15/7 15/13 15/16 18/14 18/18 21/18 22/1 26/2 34/12 35/8 35/10 36/17 37/5 38/2 38/25 39/5 40/10 42/11 46/15 48/7 48/9 48/10 53/12 57/4 58/15 59/9 59/11 59/17 62/25 63/4 64/20
**files [1]** 7/11
**filing [14]** 9/6 9/10 9/25 10/19 14/23 18/19 37/8 41/7 51/21 61/10 61/19 62/21 63/5 68/11
**filings [1]** 63/23
**final [2]** 34/8 34/19
**financial [1]** 64/7
**find [7]** 4/20 6/1 8/16 23/6 43/25 67/3 67/16
**finds [1]** 64/4
**fired [4]** 10/3 53/20 53/22 60/14
**firing [3]** 8/5 61/2 61/14
**first [15]** 6/2 7/24 16/3 25/14 26/19 31/25 39/7 45/9 46/6 47/5 53/19 53/24 57/6 57/20 59/24
**fiscal [8]** 32/20 47/20 51/20 51/23 52/10 52/10 52/17 52/18
**five [5]** 15/1 54/22 58/14 59/10 62/25
**fix [1]** 18/25
**flowing [2]** 38/4 41/19
**focus [2]** 4/13 14/8
**focused [2]** 40/21 57/3
**FOIA [1]** 11/14
**fold [1]** 35/19
**folks [1]** 20/9
**follow [1]** 5/20
**followed [1]** 34/16
**following [5]** 40/16 43/7 43/8 55/16 67/12
**footnote [6]** 8/15 18/18 30/3 47/25 59/16 65/11
**foregoing [1]** 70/7
**forever [1]** 39/11
**form [2]** 44/5 56/25
**format [1]** 70/9
**former [1]** 58/4
**forth [3]** 39/8 48/16 68/16
**forthcoming [1]** 36/7
**forward [3]** 1/17 50/1 51/3
**found [1]** 67/10
**Foundation [1]** 1/17
**four [4]** 15/2 40/5 54/18 58/14
**fours [1]** 21/5
**fourth [12]** 17/4 37/25 51/23 55/22 55/23 56/4 56/5 56/13 56/22 57/12 62/10 65/25
**fraction [1]** 50/19
**framed [1]** 5/17
**Frank [1]** 65/24
**frankly [1]** 67/10
**fraud [2]** 51/14 54/10
**Fredericksburg [1]** 56/12
**free [1]** 66/22
**frequently [1]** 19/5
**Friends [3]** 62/4 62/9 65/10
**front [1]** 12/19
**fulfill [2]** 7/18 54/21

**F**

**fulfilled [1]** 35/11
**full [8]** 9/19 11/22 39/21 43/7 51/6 61/5 62/6 64/9
**full-throated [1]** 53/16
**full-time [1]** 9/19
**fully [8]** 7/5 7/14 10/15 27/22 28/11 52/1 66/15 66/21
**fully-funded [2]** 66/15 66/21
**fun [2]** 3/24 49/21
**function [2]** 13/6 43/10
**functioned [1]** 19/6
**functioning [1]** 12/4
**functions [1]** 13/8
**fund [9]** 29/8 33/7 35/23 36/25 52/4 52/5 52/8 53/6 53/9
**funded [11]** 19/13 19/16 19/22 28/5 36/17 36/18 36/25 66/15 66/21 67/14 67/14
**funding [38]** 6/6 12/8 12/11 17/15 27/12 28/13 28/16 28/20 29/2 30/23 34/22 35/1 36/14 36/19 37/6 37/13 37/25 38/1 38/4 39/8 39/18 39/20 41/19 47/11 48/22 51/22 51/25 51/25 52/3 52/9 52/12 52/17 53/10 53/14 66/25 67/4 67/6 67/9
**funds [21]** 29/5 31/24 31/25 32/15 32/21 34/16 40/17 47/25 50/18 50/19 51/18 51/20 52/10 52/14 52/22 52/23 53/15 54/21 54/24 55/5 67/13
**furlough [1]** 47/19
**future [5]** 28/20 53/13 55/1 65/1 65/4
**FY [2]** 52/21 53/14
**FY26 [1]** 52/19

**G**

**game [1]** 18/8
**GAP [4]** 6/5 7/7 26/13 50/13
**general [7]** 13/3 32/25 50/15 51/1 51/3 52/5 53/23
**generalized [1]** 63/14
**generally [1]** 53/18
**germ [1]** 32/8
**getting [5]** 6/21 16/3 19/24 36/5 38/10
**give [7]** 3/22 3/25 13/20 23/7 23/7 44/1 44/6
**given [11]** 10/2 13/17 18/23 23/3 23/15 25/9 40/4 40/5 60/23 66/7 66/17
**gives [2]** 11/19 13/24
**giving [1]** 17/9
**go [23]** 12/3 16/6 18/12 19/3 20/5 20/11 21/19 21/22 22/8 24/14 26/18 26/22 26/24 30/19 30/21 39/9 41/13 41/20 44/9 45/19 47/5 48/4 50/1
**goes [2]** 29/10 49/24
**going [30]** 4/5 4/10 4/15 4/24 6/17 8/21 12/19 14/8 14/18 15/23 16/20 21/24 26/18 28/2 28/13 28/22 32/12 36/12 36/13 37/6 38/14 39/9 47/15 49/19 49/22 49/25 50/2 51/3 57/4 65/4
**gone [2]** 20/25 39/19
**good [8]** 3/6 22/5 27/17 34/3 38/8 43/9 48/11 64/1
**got [16]** 13/22 17/6 18/17 18/19 18/20 18/20 22/10 30/14 32/19 32/20 32/20 33/7 42/11 42/12 45/9 49/16
**government [21]** 5/13 5/13 5/15 5/16 24/5 26/7 26/9 27/5 28/10 31/7 33/22 38/12 38/19 38/21 49/16 50/12 50/13 51/6 51/14 55/20 58/5
**government's [1]** 65/21
**grab [1]** 20/12
**grant [4]** 45/2 67/6 68/8 68/16
**granting [1]** 67/13
**grants [1]** 67/4
**Grassley [3]** 29/1 30/4 30/9
**Grassley's [2]** 30/9 42/24
**Great [1]** 30/6
**GREENBELT [1]** 1/2
**grievance [1]** 39/19
**ground [1]** 16/22
**grounds [1]** 68/18
**growing [2]** 60/1 61/13
**guarantee [2]** 42/3 42/10
**guaranteed [1]** 42/17
**guess [2]** 29/17 45/7
**gutting [1]** 25/16

**H**

**H-O-L-I-B-A-U-G-H [1]** 56/3
**Hall [2]** 2/5 3/21
**hamstringing [1]** 61/17
**hamstrung [1]** 63/25
**hand [1]** 24/1
**hangs [1]** 35/19
**happen [3]** 38/14 42/14 63/11
**happened [11]** 7/7 7/17 17/23 17/24 22/11 28/11 37/12 38/17 44/7 47/6 47/10
**happy [1]** 23/16
**hard [3]** 4/2 18/22 25/8
**harm [5]** 6/3 11/25 39/13 61/6 64/5
**hasn't [2]** 10/21 38/17
**Havens [2]** 17/6 57/10
**having [9]** 6/21 7/22 8/10 10/5 33/15 39/25 60/14 63/7 66/15
**head [1]** 35/19
**health [1]** 57/25
**hear [3]** 30/21 55/18 56/11
**heard [3]** 26/8 31/7 68/5
**hearing [2]** 1/11 3/13
**heart [1]** 55/18
**heavily [1]** 14/5
**held [1]** 70/8
**help [8]** 8/2 13/7 20/11 23/14 59/14 62/18 64/1 66/16
**helped [1]** 58/14
**helpful [1]** 23/23
**helps [1]** 58/6
**hereby [1]** 70/6
**herring [1]** 29/17
**highly [2]** 50/25 51/11
**highly-competent [1]** 51/11
**highly-skilled [1]** 50/25
**him [1]** 29/2
**his [2]** 53/21 53/24
**historic [1]** 59/13
**historically [5]** 32/15 36/24 44/2 54/2 60/24
**hit [2]** 20/7 20/12
**hold [1]** 10/6
**Holder [1]** 57/12
**Holibaugh [1]** 56/3
**honest [1]** 42/6
**Honor [20]** 4/25 5/4 5/24 6/1 13/14 19/2 21/15 24/12 27/2 27/10 30/21 33/23 34/3 34/10 36/5 46/23 47/3 49/3 49/20 68/21
**HONORABLE [3]** 1/11 3/5 68/25
**hotline [1]** 59/11
**hotlines [3]** 59/6 59/7 62/17
**hours [3]** 15/3 58/17 58/18
**however [7]** 36/5 40/6 51/22 51/24 53/15 58/12 64/16
**huge [1]** 41/18
**huh [1]** 6/20
**hurt [1]** 12/16
**hypothetical [3]** 6/22 17/21 56/18

**I**

**I'll [9]** 4/16 25/1 25/11 26/7 27/1 27/6 27/9 27/10 50/10
**I'm [55]** 3/21 3/23 4/3 4/5 4/7 4/8 4/15 5/11 5/22 6/15 6/17 6/21 7/22 7/22 8/10 10/22 14/16 14/20 15/23 16/20 18/7 18/10 19/21 20/17 21/10 21/11 21/14 22/10 22/11 23/9 23/10 23/16 23/25 24/16 24/19 24/21 28/17 29/6 29/14 29/14 30/19 30/20 31/20 33/10 39/8 43/8 45/5 45/8 46/7 46/12 49/19 49/21 50/2 51/3 52/7
**I've [2]** 4/1 68/5
**IC [15]** 7/5 7/14 7/19 8/14 9/14 10/11 10/13 16/6 19/10 20/20 20/21 21/16 23/2 23/5 43/10
**idea [7]** 17/14 22/22 27/13 41/6 44/11 44/19 44/20
**idea what [1]** 22/22
**identify [1]** 3/14
**IG [28]** 7/11 7/12 8/11 8/18 8/22 8/25 12/3 13/9 13/16 14/4 16/18 16/19 17/25 18/4 19/6 21/24 25/16 25/25 51/2 52/8 53/18 54/1 59/6 59/7 60/1 60/13 60/22 61/13
**IGIE [1]** 52/9
**Ignet [3]** 11/7 11/8 11/9
**Ignet.gov [3]** 35/12 62/13 62/16
**IGs [46]** 8/5 8/7 8/13 8/19 10/3 10/5 10/14 10/19 16/3 16/14 16/25 17/19 17/19 21/10 21/10 23/5 25/17 42/6 51/3 51/11 51/16 53/2 53/20 54/10 58/7 58/15 59/2 59/3 60/4 60/11 60/15 60/15 60/17 61/2 61/2 61/4 61/14 61/15 61/24 62/2 62/23 64/19 66/6 66/17 66/19 66/19
**IGs' [1]** 66/22
**III [6]** 5/10 5/23 5/25 39/12 44/21 55/17
**illegal [1]** 58/5
**imminent [4]** 6/3 36/6 43/8 56/17
**imminently [1]** 47/16
**impair [2]** 6/12 63/6
**impaired [3]** 13/5 13/6 18/24
**impairing [1]** 41/8
**impairment [3]** 10/8 10/9 41/10
**impairs [1]** 63/11
**impingement [1]** 21/3
**impingements [1]** 22/3
**implementation [1]** 6/6
**implemented [1]** 54/8
**implications [1]** 48/22
**important [10]** 8/24 13/18 14/9 14/22 15/15 21/13 25/25 39/16 41/16 49/2
**Impoundment [1]** 33/4
**improper [3]** 55/14 58/5 67/17
**inability [1]** 63/12
**inception [1]** 52/16
**inclined [1]** 45/8
**include [2]** 54/2 58/4
**included [1]** 21/17
**includes [2]** 21/16 51/2
**including [3]** 49/10 53/23 60/15
**increase [4]** 50/23 60/9 60/10 61/5
**increased [2]** 60/3 60/25
**increasing [1]** 60/7
**increment [1]** 40/18
**increments [1]** 19/14
**incursion [2]** 18/5 19/25
**Indeed [1]** 63/4
**independence [6]** 19/25 21/4 22/4 43/10 43/14 64/23
**independent [8]** 9/17 12/11 12/20 17/6 21/4 65/13 66/8 66/16
**indicate [2]** 68/10 68/15
**indicates [1]** 43/20
**indirect [2]** 21/13 21/13
**individual [2]** 20/16 60/6
**individuals [3]** 58/14 59/7 61/3
**inefficient [1]** 45/18
**inference [1]** 48/5
**influence [3]** 28/22 28/24 66/22
**information [22]** 7/13 7/13 11/10 11/13 11/15 14/3 14/6 14/9 14/10 20/13 22/18 23/4 28/24 31/8 43/24 44/1 44/6 44/7 44/10 63/7 64/13
**informational [2]** 44/4 44/23
**informing [1]** 8/23
**infrequency [1]** 63/5
**infrequently [1]** 25/9
**inherent [2]** 29/4 31/4
**initial [2]** 27/17 38/5
**injunctive [1]** 36/4
**injured [8]** 8/16 20/9 22/23 25/4 36/13 57/19 62/12 62/24
**injuries [13]** 6/4 7/3 17/22 25/2 25/19 25/20 44/25 59/22 63/19 65/12 66/2 66/14 66/24
**injury [38]** 5/7 10/1 10/23 14/13 14/19 16/1 16/5 16/22 17/8 17/10 17/13 18/9 18/12 25/15 25/21 34/13 36/6 41/17 44/5 44/21 44/23 56/15 56/24 57/6 57/7 57/8 59/21 59/24 63/14 63/16 64/4 64/22 65/5 65/18 65/20 67/5 67/8 67/9
**input [2]** 26/10 26/21
**inquiry [1]** 57/2
**inserting [1]** 12/9
**Inspector [3]** 13/3 51/2 52/5
**Inspectors [3]** 50/15 51/1 53/23
**installation [2]** 8/7 60/17
**installed [1]** 8/6
**installing [1]** 54/10
**installment [1]** 66/19
**instance [1]** 26/19
**instead [4]** 14/17 37/23 47/22 47/24
**institute [1]** 53/4
**insulated [1]** 28/5
**insulates [1]** 52/12
**intake [1]** 61/6
**intakes [8]** 24/17 24/22 24/22 25/3 60/2 60/9 60/9 60/11
**integrity [4]** 9/1 25/25 50/15 59/14
**intend [2]** 5/19 5/20
**intended [1]** 48/6
**intensive [1]** 60/7
**intent [1]** 32/6
**intentions [1]** 48/12
**interacted [2]** 54/2 60/16
**interacting [2]** 10/18 10/19
**interaction [3]** 9/4 9/9 60/23
**interest [6]** 9/21 26/22 41/5 41/5 46/3 68/4
**interested [1]** 38/8
**interesting [1]** 68/14
**interference [1]** 43/15
**Interior [1]** 54/4
**interns [1]** 58/22
**interrupted [1]** 30/19
**intervening [1]** 17/8
**intimidation [1]** 54/9
**investigate [2]** 53/1 53/2
**investigates [1]** 51/15
**investigation [2]** 42/22 51/7
**investigations [3]** 14/9 42/19 54/11
**invoke [1]** 55/25
**involved [3]** 42/24 67/14 67/23
**involvement [3]** 18/13 59/12 59/14
**involves [1]** 23/4
**involving [1]** 21/12
**is [258]**
**isn't [3]** 33/9 38/1 44/20
**issue [10]** 5/16 17/17 38/10 39/6 42/1 43/3 43/5 43/21 45/6 46/7
**issues [11]** 4/16 10/14 17/25 26/18 34/6 34/6 37/21 44/14 45/3 45/14 46/14
**itself [3]** 12/9 56/16 66/3

**J**

**Jadhav [1]** 55/21
**January [12]** 19/13 36/12 37/7 37/13 37/24 39/7 47/19 47/20 48/3 50/20 53/8 53/22
**January 24 [1]** 53/22
**January 30 [2]** 50/20 53/8
**January 30th [4]** 36/12 47/19 47/20 48/3
**job [1]** 31/24
**joined [1]** 3/21
**jointly [1]** 65/10
**Jones [1]** 55/22
**judge [5]** 1/12 26/19 26/19 46/5 46/9
**judge's [1]** 9/7
**judicial [2]** 58/24 70/10
**July [1]** 39/8
**jump [1]** 25/3
**juncture [1]** 59/13
**JUNE [3]** 1/12 38/3 70/12
**jurisdiction [7]** 4/11 26/18 45/9 50/8 55/6 56/1 56/11
**jurisdictional [2]** 45/5 68/17
**justice [4]** 2/2 26/22 46/3 68/4
**justiciability [1]** 37/22
**justification [3]** 33/8 33/9 48/17

**K**

**K-R-A-S-N-E-R [1]** 65/24
**KALI [2]** 1/16 3/15
**keep [4]** 26/22 28/5 42/5 42/6
**keeping [1]** 16/24
**Kennedy [1]** 67/19
**Kentucky [1]** 57/17
**kept [2]** 38/4 38/4
**kind [5]** 9/8 10/1 16/9 23/24 33/2
**kinds [3]** 9/22 21/24 44/1
**knees [1]** 15/25
**knock [1]** 49/25
**Krasner [1]** 65/24

**L**

**Labor [2]** 20/2 54/5
**lack [10]** 4/11 25/4 26/11 28/1 50/8 60/21 63/13 63/17 65/21 68/1
**lacks [4]** 55/14 55/17 67/16 67/17
**laid [1]** 9/10
**land [2]** 20/18 37/16
**Lane [2]** 57/11 57/16
**language [2]** 30/15 32/6
**lapses [1]** 52/13
**large [1]** 37/1
**largely [3]** 39/24 40/25 53/13
**last [11]** 8/1 19/12 22/1 22/12 25/9 38/2 39/8 47/2 54/23 59/10 62/12
**late [2]** 37/11 39/5
**later [2]** 31/16 53/5
**launch [1]** 54/10
**law [11]** 4/8 5/20 9/21 17/2 17/4 31/19 32/18 38/12

**L**

**law... [3]** 38/21 53/7 55/3
**lawsuit [8]** 34/23 37/20 37/23 38/25 40/11 48/9 48/10 63/20
**layer [1]** 13/6
**lead [1]** 64/23
**leads [1]** 60/24
**lean [2]** 46/13 49/8
**leaning [1]** 22/11
**least [14]** 5/11 5/14 9/5 13/2 18/14 18/16 25/14 30/25 32/14 34/11 36/6 40/16 58/13 64/18
**Leeper [5]** 50/3 52/7 70/4 70/15 70/16
**legal [1]** 58/22
**legislative [1]** 51/4
**length [1]** 22/24
**lens [2]** 34/7 34/7
**less [3]** 46/8 48/19 61/17
**letter [3]** 18/17 30/12 59/18
**lies [2]** 61/1 67/22
**lift [1]** 18/22
**light [8]** 5/14 8/8 18/10 27/15 35/16 53/17 64/2 64/12
**likely [7]** 16/24 17/5 17/9 56/19 65/16 66/14 66/17
**limited [4]** 47/25 50/20 58/13 65/24
**limiting [1]** 47/25
**line [1]** 41/20
**lion's [1]** 66/4
**listen [1]** 38/7
**litigation [1]** 48/13
**little [6]** 9/5 29/16 31/2 31/5 41/18 60/23
**living [2]** 4/4 5/22
**LLC [3]** 56/3 62/4 62/9
**loans [1]** 64/8
**log [1]** 3/23
**long [4]** 4/2 13/13 33/8 53/11
**longer [5]** 7/19 19/25 22/5 28/13 41/11
**look [10]** 9/21 10/24 23/16 23/18 24/13 28/9 34/6 41/23 44/9 46/6
**looked [2]** 20/25 62/19
**looking [9]** 7/22 8/11 10/22 14/20 23/11 24/21 36/8 43/6 63/1
**losing [2]** 11/23 12/6
**loss [3]** 16/6 16/7 25/7
**lost [2]** 7/14 7/15
**lot [9]** 10/21 14/21 15/4 15/8 15/12 22/11 40/21 44/14 58/19
**lots [1]** 42/13
**Lovern [2]** 56/4 56/8
**Lujan [3]** 65/19 66/1 66/10
**lump [1]** 40/5

**M**

**made [14]** 17/14 28/9 29/2 29/8 29/20 37/3 37/24 38/3 47/21 53/13 62/18 63/2 65/3 66/8
**main [2]** 39/18 59/22
**maintains [2]** 51/24 55/8
**make [16]** 7/24 8/25 11/1 12/1 27/6 28/17 30/8 31/24 33/4 49/22 50/3 53/7 62/7 64/3 66/17 66/20
**makes [3]** 33/6 46/10 49/14
**making [4]** 16/21 21/2 29/11 47/9
**MANAGEMENT [4]** 1/8 3/12 50/6 51/6
**mandamus [2]** 31/3 54/20
**mandated [1]** 52/3
**mandatory [1]** 33/3
**manner [2]** 5/21 12/22
**many [3]** 9/22 15/13 53/23
**March [1]** 38/3
**MARYLAND [8]** 1/1 3/4 4/10 14/16 46/17 55/11 56/9 70/6
**materially [1]** 63/11
**matter [4]** 3/9 3/12 50/8 70/9
**matters [2]** 39/23 40/8
**may [16]** 5/5 14/11 14/15 17/8 18/15 22/18 26/6 30/24 34/3 37/21 42/1 46/5 49/2 56/9 58/18 66/16
**maybe [9]** 7/1 18/22 21/6 22/8 29/18 31/5 36/6 41/15 47/23
**maybe-someday [1]** 41/15
**MB [1]** 50/17
**mean [9]** 9/6 9/19 13/20 13/24 17/18 19/13 24/7 31/3 46/7
**meaningfully [1]** 64/5
**means [1]** 6/11
**mechanisms [1]** 24/9
**members [3]** 51/3 58/22 58/22
**mere [1]** 62/23
**merely [1]** 65/17
**merits [3]** 26/9 26/18 27/3
**met [1]** 45/21
**method [1]** 62/22
**methods [1]** 23/8
**middle [1]** 42/14
**might [5]** 14/18 23/10 24/9 39/7 41/6
**Miller [1]** 67/18
**million [3]** 48/16 48/19 53/6
**mind [3]** 28/19 31/6 59/19
**minimis [1]** 59/13
**minute [1]** 26/6
**misfit [1]** 41/3
**mission [18]** 6/13 7/9 7/18 10/5 11/25 14/5 21/12 41/8 41/17 50/22 51/10 57/22 57/23 58/11 62/15 63/6 63/11 67/11
**mission-critical [1]** 62/15
**missions [2]** 12/10 54/22
**modified [1]** 57/16
**moment [2]** 3/23 63/21
**money [1]** 54/21
**Montgomery [1]** 65/25
**month [8]** 12/24 19/14 34/23 35/3 36/10 38/24 40/10 40/18
**months [4]** 19/21 22/2 22/12 36/18
**moot [5]** 5/12 5/16 38/11 38/22 47/10
**mooted [1]** 38/24
**mootness [5]** 5/10 12/22 22/15 29/16 34/7
**more [25]** 6/7 7/20 8/3 12/2 13/17 14/19 21/6 21/8 21/23 22/19 24/24 25/25 25/25 26/2 37/23 40/18 41/4 46/8 49/10 53/18 59/3 59/13 60/7 61/25 63/23
**Moreover [1]** 64/21
**morning [2]** 3/6 34/3
**most [10]** 5/3 5/15 8/6 8/8 18/10 35/16 49/14 53/17 56/7 61/14
**motion [9]** 24/15 27/13 31/13 38/17 45/2 50/7 55/6 68/8 68/17
**motions [2]** 1/11 3/13
**move [2]** 42/12 55/20
**Moving [1]** 65/8
**Mr [1]** 13/21
**Mr. [5]** 3/8 6/23 33/25 54/6 54/12
**Mr. Sirkovich [1]** 33/25
**Mr. Ulander [1]** 3/8
**Mr. Whitehouse's [3]** 6/23 54/6 54/12
**Ms. [4]** 42/1 47/1 50/3 52/7
**Ms. Leeper [2]** 50/3 52/7
**Ms. Schellenberg [2]** 42/1 47/1
**much [9]** 19/9 21/5 21/14 22/19 29/9 37/22 41/4 65/6 67/7
**must [6]** 37/16 55/20 56/15 56/24 59/25 68/3
**myself [1]** 21/20

**N**

**national [1]** 58/21
**natural [1]** 57/24
**nearly [2]** 51/25 60/14
**necessarily [5]** 18/6 21/3 26/2 45/22 55/4
**necessary [1]** 53/11
**necessitated [1]** 61/19
**need [10]** 4/7 12/5 17/2 22/18 26/3 26/3 30/24 37/10 63/24 68/20
**needed [1]** 61/8
**needs [2]** 22/19 42/5
**neither [1]** 63/19
**never [3]** 47/23 47/24 62/3
**new [3]** 22/15 24/25 53/21
**next [5]** 39/9 49/24 52/9 52/10 59/20
**night [2]** 38/2 39/8
**NIH [2]** 67/9 67/12
**NIH's [2]** 67/3 67/6
**no [32]** 1/6 4/20 7/19 9/16 10/5 10/12 13/20 17/4 19/20 19/25 20/24 22/3 22/5 28/13 31/10 32/12 33/14 34/12 37/4 38/20 41/10 42/3 42/10 45/24 53/13 58/3 60/20 62/22 63/8 66/17 67/23 68/21
**none [1]** 68/3
**Nonetheless [1]** 54/14
**nonpartisan [1]** 28/23
**nonprofit [1]** 57/23
**nonpublic [1]** 23/4
**nonspecific [3]** 13/11 14/13 18/21
**nope [1]** 54/12
**normal [1]** 36/22
**not [107]**
**not be [1]** 31/17
**Notably [1]** 47/19
**note [5]** 9/12 48/21 51/24 62/8 67/1
**noted [1]** 14/4
**NOTES [1]** 1/25
**nothing [5]** 10/13 11/19 43/18 43/19 44/18
**notice [1]** 58/24
**noting [1]** 23/22
**November [9]** 34/21 36/9 37/12 47/7 47/13 48/2 50/18 51/19 53/5
**November 18th [4]** 34/21 47/7 47/13 53/5
**number [5]** 3/10 24/17 50/20 51/9 64/3
**numerous [1]** 59/6
**NW [1]** 2/3

**O**

**obfuscate [1]** 27/22
**obstacle [1]** 17/3
**obvious [1]** 61/18
**occur [1]** 39/13
**occurred [1]** 62/4
**October [2]** 37/12 50/18
**October 1 [1]** 50/18
**off [4]** 10/4 15/25 24/6 49/25
**offers [2]** 51/13 63/8
**office [7]** 1/8 3/11 50/6 51/5 51/6 51/6 53/19
**offices [2]** 51/1 52/8
**OFFICIAL [3]** 70/1 70/4 70/17
**officials [1]** 51/5
**offline [2]** 44/8 63/10
**often [5]** 26/2 37/2 63/8 65/9 65/9
**oh [4]** 30/14 30/20 44/6 47/23
**OIGs [2]** 59/15 62/18
**okay [26]** 3/22 4/1 5/1 5/24 6/15 6/25 15/22 25/10 26/5 27/8 30/6 30/7 30/9 30/14 30/18 33/21 33/21 33/25 35/2 35/9 35/15 46/21 47/1 48/25 49/21 62/11
**OMB [70]** 6/17 6/18 12/9 12/14 13/4 13/19 15/24 17/11 18/4 18/25 21/3 25/16 28/7 29/2 29/11 29/21 30/10 30/13 30/16 31/10 31/20 32/9 33/6 33/10 33/11 33/15 34/15 35/22 36/18 39/7 40/6 40/16 47/22 50/7 50/7 50/10 50/13 51/5 51/18 51/19 52/13 52/16 52/20 52/24 53/5 53/13 54/20 54/25 55/1 55/2 55/4 55/5 55/6 57/19 57/21 59/20 59/23 61/6 61/18 61/23 62/1 62/12 63/17 63/19 64/22 66/3 66/4 66/11 66/14 66/22
**OMB's [18]** 9/8 15/23 16/9 17/12 19/25 25/22 32/25 33/1 39/14 48/18 50/14 53/9 53/15 54/14 54/15 54/23 57/7 66/24
**once [3]** 7/15 13/2 47/10
**one [44]** 8/4 8/4 8/14 9/10 9/16 9/18 10/10 10/22 11/6 11/10 11/12 11/21 11/22 12/7 13/12 15/15 17/3 19/19 22/1 24/3 24/10 25/8 25/12 26/8 27/20 34/11 35/22 40/5 41/6 41/14 42/16 42/17 44/12 44/17 45/24 45/25 46/5 52/10 54/17 62/23 63/4 63/23 64/21 67/25
**ones [3]** 36/3 39/17 66/7
**online [4]** 7/6 35/12 44/9 63/7
**only [20]** 4/9 8/14 14/23 18/12 18/13 27/16 28/6 31/14 36/17 36/18 37/5 52/23 53/9 55/8 55/10 55/19 58/14 62/25 64/20 67/25
**onus [1]** 38/18
**open [6]** 16/25 35/14 41/20 42/3 44/16 44/16
**opening [1]** 35/18
**operate [6]** 25/23 25/24 32/21 41/11 52/2 53/4
**operates [1]** 13/1
**operating [3]** 7/5 9/1 38/7
**operational [2]** 8/24 37/18
**operations [3]** 52/25 53/11 60/21
**operative [1]** 55/12
**opinion [3]** 64/9 64/9 64/15
**opinions [1]** 45/7
**opportunity [5]** 4/1 12/6 19/20 22/13 27/5
**opposed [1]** 21/12
**option [3]** 10/13 49/9 49/10
**options [1]** 4/21
**order [7]** 3/2 5/5 7/17 24/6 41/22 42/1 68/15
**ordinary [4]** 8/10 57/22 59/2 59/19
**organization [15]** 8/1 8/12 9/19 13/8 20/10 20/15 21/8 41/2 41/10 56/16 57/18 57/20 57/23 58/19 63/24
**organization's [6]** 20/13 57/9 57/10 57/13 57/15 64/1
**organizational [4]** 6/8 56/14 57/7 64/6
**organizations [5]** 19/4 20/3 21/17 21/17 40/23
**other [26]** 4/14 4/16 7/3 9/10 9/22 11/10 11/12 11/15 11/21 14/10 14/24 15/16 16/15 24/8 36/8 37/21 39/16 40/23 42/4 44/14 45/12 45/14 46/22 64/25 66/18 67/22
**otherwise [5]** 4/15 8/5 38/13 52/1 68/2
**ought [1]** 22/12
**out [15]** 9/10 9/20 12/10 18/11 21/11 23/14 26/17 30/5 31/2 32/10 37/6 37/9 40/9 45/13 60/5
**outcome [4]** 34/9 42/3 42/13 57/4
**outcomes [1]** 42/19
**outreach [1]** 42/24
**outset [1]** 46/18
**outside [2]** 10/17 31/19
**over [12]** 16/10 26/20 28/23 35/19 45/19 48/17 50/14 53/6 59/7 60/8 61/23 67/2
**overall [1]** 51/10
**overnight [1]** 52/24
**oversight [7]** 20/16 20/17 35/25 42/9 50/13 51/11 52/25
**Oversight.gov [4]** 11/13 35/12 62/14 62/14
**own [9]** 8/12 16/19 29/11 43/3 57/15 58/16 59/5 60/13 62/17

**P**

**P.O [2]** 1/18 1/21
**page [3]** 64/8 65/18 70/9
**Pages [2]** 64/3 64/14
**paper [1]** 38/10
**paperless [1]** 68/15
**Paragraph [22]** 30/1 43/6 43/12 50/21 51/9 51/12 52/11 52/15 52/18 53/4 53/8 53/20 54/7 55/12 57/25 58/10 58/16 59/8 59/15 60/4 60/12
**Paragraphs [6]** 51/16 53/3 58/8 60/18 61/11 62/20
**Parkway [3]** 62/4 62/9 65/10
**part [5]** 8/23 14/5 49/21 58/11 60/11
**partially [1]** 53/9
**particular [3]** 12/12 23/16 53/25
**particularized [6]** 10/23 16/2 16/5 56/17 63/16 65/2
**particularly [4]** 27/14 32/11 33/12 47/8
**parties [4]** 45/19 65/14 66/5 68/5
**partisan [8]** 8/8 17/20 25/17 28/14 30/16 60/17 61/3 66/19
**partisanship [1]** 66/22
**partners [1]** 67/8
**parts [1]** 15/15
**party [2]** 18/7 55/25
**passed [1]** 47/17
**past [3]** 36/2 43/8 58/14
**PAULA [5]** 1/11 3/5 70/4 70/15 70/16
**payments [1]** 53/7
**PEER [102]**
**PEER's [15]** 5/6 6/13 8/12 9/12 18/25 40/22 44/13 57/22 58/11 59/19 60/7 60/13 62/2 63/6 66/24
**pen [1]** 38/10
**pending [2]** 3/9 50/6
**people [4]** 14/24 23/5 48/4 51/13
**per [2]** 52/20 58/18
**percent [2]** 48/19 60/14
**perceptible [2]** 10/8 10/9
**perceptibly [6]** 6/12 13/5 18/24 18/24 62/24 63/6
**perfect [1]** 19/16
**perhaps [1]** 35/22
**period [1]** 59/7
**periodic [1]** 52/8
**personal [2]** 20/13 64/13
**personnel [2]** 50/24 51/5
**persuade [1]** 4/15
**persuasive [2]** 21/6 25/12
**PETA [2]** 67/1 67/10
**PETA's [1]** 67/3
**piece [4]** 14/21 14/22 30/10 42/17
**pivot [1]** 61/13
**pivoting [2]** 61/9 62/2
**place [5]** 6/17 16/3 20/10 42/11 47/13
**placement [1]** 61/3
**places [1]** 67/22
**plain [1]** 32/5
**plainly [1]** 61/14
**plaintiff [16]** 4/9 4/19 4/24 20/13 35/24 36/10 40/13 51/24 54/19 55/10 56/24 57/3 63/22 67/23 67/25 68/2
**plaintiff's [1]** 34/11
**plaintiffs [35]** 1/6 1/15 3/16 3/17 3/18 3/19 4/5 6/5 7/4 14/10 20/8 34/22 35/13 38/18 39/17 39/22

**P**

**plaintiffs... [19]** 40/8 43/22 44/11 44/14 45/1 45/16 45/22 50/11 53/12 53/18 54/14 54/19 54/25 56/7 64/6 64/13 64/16 67/21 68/2
**plaintiffs' [8]** 34/9 35/16 35/22 39/4 42/4 42/5 61/16 65/18
**plausible [2]** 34/20 48/5
**play [1]** 15/11
**pleading [2]** 49/18 64/25
**please [3]** 3/14 23/15 34/4
**pleasure [1]** 67/2
**pled [10]** 8/8 10/2 10/22 18/15 18/16 18/23 25/15 40/15 59/3 61/4
**podium [1]** 5/2
**POGO [3]** 7/7 26/13 50/13
**point [23]** 11/24 12/1 12/25 16/15 20/2 21/5 23/14 26/10 29/19 29/24 30/5 30/24 36/13 36/20 37/17 39/16 49/4 60/12 60/18 61/16 61/25 65/3 66/16
**points [1]** 59/22
**policies [1]** 50/24
**policing [1]** 43/3
**policy [52]** 5/17 5/18 6/6 6/12 6/17 6/18 9/8 12/9 17/14 17/15 27/12 27/14 27/18 28/11 28/16 29/4 29/5 29/8 29/12 29/22 30/23 31/11 32/5 32/12 33/2 34/15 35/18 40/16 47/13 47/14 47/23 50/14 52/20 54/16 55/1 55/5 57/7 57/19 59/20 59/23 61/6 61/18 61/23 62/2 62/12 63/17 66/3 66/4 66/11 66/14 66/25 67/13
**policy's [1]** 57/21
**political [2]** 43/10 43/15
**portion [1]** 14/12
**position [3]** 7/23 11/2 40/13
**Postal [1]** 55/23
**potential [1]** 23/2
**potentially [1]** 24/3
**Potomac [1]** 56/12
**power [4]** 17/19 33/15 54/20 55/18
**powers [3]** 31/4 43/1 54/18
**practical [2]** 48/22 49/14
**practices [1]** 20/10
**predatory [2]** 20/9 64/8
**predict [1]** 66/10
**Predictably [1]** 65/20
**prefer [1]** 4/20
**preferences [1]** 31/11
**prejudice [14]** 4/11 22/10 26/12 45/25 46/12 46/13 46/20 49/4 49/6 49/8 49/9 68/7 68/9 68/17
**presence [2]** 55/11 58/21
**present [2]** 2/5 59/1
**presented [3]** 19/15 56/25 64/4
**President [2]** 53/19 53/22
**presiding [2]** 3/5 67/2
**press [1]** 30/17
**presume [1]** 66/10
**pretty [1]** 48/20
**preview [1]** 4/3
**previous [1]** 60/10
**previously [4]** 12/4 19/6 44/16 60/16
**primarily [1]** 31/10
**primary [2]** 25/18 25/21
**principal [1]** 13/7
**principally [3]** 16/17 63/1 66/3
**principle [2]** 45/13 60/25
**prior [1]** 47/17
**privilege [1]** 24/8
**privileged [1]** 23/10
**probably [1]** 43/4
**problem [12]** 7/21 7/21 8/4 8/4 16/19 18/25 21/13 41/18 41/25 43/21 43/22 49/19
**procedural [1]** 46/7
**Procedure [1]** 55/19
**Procedures [1]** 54/17
**proceeding [1]** 6/8
**proceedings [2]** 69/2 70/8
**proceeds [1]** 56/14
**process [5]** 9/3 22/6 42/3 42/6 60/1
**process because [1]** 22/6
**processing [1]** 34/24
**products [1]** 64/7
**professionalism [1]** 50/23
**programmatic [11]** 5/19 28/21 28/25 29/3 29/10 29/24 33/9 38/8 48/1 54/15 64/22
**programming [1]** 29/12
**Project [2]** 50/12 50/13
**promised [1]** 20/18
**prong [1]** 65/16
**prongs [1]** 6/22
**proper [4]** 29/12 46/6 50/4 67/12
**properly [3]** 9/1 43/11 46/4
**property [1]** 67/23
**proposition [1]** 63/24
**prospective [1]** 44/12
**protect [4]** 7/9 57/23 57/24 67/11
**protecting [3]** 7/9 9/23 67/13
**Protection [1]** 54/3
**protections [1]** 58/3
**protective [1]** 24/6
**protector [1]** 13/4
**provide [2]** 63/14 64/6
**provided [3]** 11/15 47/10 61/21
**provides [4]** 7/6 13/10 14/7 17/2
**providing [1]** 52/13
**public [8]** 1/4 3/10 14/8 23/7 50/11 57/24 57/25 62/15
**publicize [1]** 7/13
**pulling [1]** 33/3
**pure [1]** 61/25
**purpose [3]** 5/12 12/4 18/1
**purposes [4]** 15/24 31/8 44/21 50/20
**pursuant [1]** 70/6
**put [14]** 8/18 14/17 14/17 16/12 23/12 25/2 25/3 25/15 30/5 40/13 46/17 47/13 48/16 67/8
**puts [3]** 14/6 14/7 14/8
**putting [2]** 25/16 38/10
**PX [1]** 1/7
**PX25 [1]** 3/10
**PX25-4164 [1]** 3/10

**Q**

**quantified [1]** 15/21
**quantify [1]** 14/25
**quarter [4]** 37/25 39/10 47/20 51/23
**quarterly [1]** 40/6
**question [6]** 5/10 9/7 26/1 45/5 46/11 56/6
**questions [3]** 22/15 46/22 50/4
**quite [3]** 7/25 14/13 28/15
**quote [30]** 50/14 50/15 50/17 50/19 50/23 51/20 52/12 52/20 53/6 56/15 57/2 57/8 57/14 57/16 57/23 58/5 59/5 59/14 59/25 60/1 60/3 61/25 62/1 62/1 62/1 62/15 64/6 65/12 66/7 67/22
**quoted [2]** 53/21 58/23
**quoting [2]** 56/21 57/17

**R**

**Railroad [1]** 56/12
**raised [3]** 26/9 48/5 67/4
**rather [2]** 13/25 57/15
**reach [2]** 45/9 63/18
**reaches [1]** 55/8
**reaching [1]** 4/16
**read [3]** 4/1 50/2 60/5
**reading [1]** 4/8
**ready [1]** 5/1
**real [7]** 8/16 8/17 16/2 16/12 25/18 67/5 67/23
**reallocation [1]** 57/13
**really [18]** 4/18 5/15 5/22 13/21 14/16 19/10 25/8 25/11 25/12 25/15 26/16 32/5 38/11 39/16 40/13 47/8 49/23 68/13
**Realty [1]** 57/10
**reason [8]** 13/17 13/19 26/16 32/3 32/4 38/16 46/16 47/12
**reasonable [1]** 37/6
**reasons [10]** 10/10 29/5 29/8 32/12 33/2 33/10 40/24 55/16 67/16 68/16
**receive [1]** 52/21
**received [4]** 24/17 52/1 60/8 60/10
**receives [2]** 51/15 52/8
**recent [1]** 27/15
**recipients [2]** 67/6 67/9
**recommend [1]** 64/13
**record [7]** 3/14 27/11 29/20 30/17 31/6 50/2 68/16
**red [1]** 29/16
**redress [12]** 7/15 10/11 16/6 17/13 17/23 18/12 19/11 20/1 25/7 35/13 41/18 44/15
**redressability [7]** 17/2 41/25 43/5 43/21 65/8 65/16 66/13
**redressable [7]** 17/5 17/9 17/16 17/19 17/20 56/24 63/19
**redressed [2]** 16/24 56/19
**redresses [1]** 13/17
**reduce [2]** 43/14 66/22
**refer [2]** 50/10 53/2
**reference [1]** 63/2
**referrals [1]** 42/19
**referred [1]** 59/6
**refile [4]** 22/15 26/12 46/1 68/10
**refiled [1]** 24/1
**refunded [2]** 12/23 12/24
**refusal [2]** 53/15 54/23
**refuse [2]** 39/19 54/15
**refused [1]** 50/17
**refusing [1]** 27/24
**regard [10]** 7/19 11/3 12/16 15/22 16/23 18/8 32/24 38/6 55/5 63/22
**regulation [2]** 65/21 65/22
**regulations [1]** 70/10
**rel [1]** 55/21
**related [7]** 5/6 5/7 6/2 6/4 33/1 64/11 68/11
**relating [1]** 58/6
**relationship [3]** 20/14 21/14 41/17
**relationships [1]** 13/22
**relative [1]** 63/5
**relatively [3]** 18/21 31/1 60/23
**relevant [4]** 49/18 58/12 59/19 67/22
**relief [10]** 17/9 31/17 36/4 43/12 43/16 43/17 44/5 44/12 54/25 56/25
**relies [3]** 57/21 62/14 63/9
**reluctant [1]** 26/16
**rely [3]** 7/7 10/24 53/10
**relying [3]** 29/20 30/9 66/1
**remain [1]** 66/7
**remainder [1]** 51/20
**remaining [2]** 55/10 61/15
**remains [1]** 57/2
**remarks [1]** 27/7
**remedy [3]** 31/14 65/18 66/14
**remedying [1]** 18/11
**remember [1]** 20/8
**removed [2]** 13/2 13/6
**renewed [1]** 49/1
**repeat [1]** 21/19
**repetition [1]** 5/14
**report [2]** 42/18 54/9
**reported [1]** 70/8
**REPORTER [4]** 62/8 70/1 70/4 70/17
**repositories [1]** 11/17
**repository [1]** 64/11
**represent [1]** 20/9
**representation [2]** 47/5 53/13
**represented [2]** 21/8 59/9
**represents [1]** 60/2
**required [2]** 42/18 53/7
**requirements [1]** 65/23
**requires [3]** 43/10 57/20 65/16
**requisite [1]** 57/3
**residents [1]** 26/14
**resides [3]** 4/10 67/23 67/25
**resolution [2]** 36/12 47/18
**resolve [2]** 10/13 56/6
**resource [1]** 61/22
**resources [19]** 7/6 7/7 7/16 7/17 10/16 10/18 14/7 16/7 18/21 22/24 22/25 24/24 57/10 57/13 57/24 59/25 61/9 61/19 63/8
**respect [10]** 12/22 13/11 30/25 35/18 37/11 37/13 40/19 41/1 46/11 50/4
**responses [2]** 19/18 49/16
**responsibilities [2]** 35/11 40/9
**RESPONSIBILITY [3]** 1/4 3/11 50/12
**responsible [3]** 20/15 20/17 60/15
**rest [3]** 6/5 24/11 53/14
**restore [4]** 43/13 59/14 66/16 66/23
**restored [3]** 34/22 35/1 44/9
**restrict [2]** 17/15 29/5
**restricted [5]** 12/8 27/12 28/16 30/23 48/15
**restriction [1]** 48/20
**restrictions [1]** 48/23
**result [4]** 52/24 59/25 61/23 63/16
**results [1]** 57/14
**resume [1]** 53/11
**retaliate [1]** 61/2
**retaliatory [5]** 8/9 54/11 60/17 61/3 61/15
**rethink [1]** 18/15
**retrospective [1]** 44/6
**returning [1]** 43/5
**reversed [1]** 53/5
**review [11]** 5/19 28/21 29/1 29/3 29/10 29/24 38/9 39/2 48/2 54/16 64/22
**revisit [1]** 22/14
**revolving [2]** 52/4 52/8
**Richard [1]** 56/11
**rid [1]** 16/3
**RIF [2]** 47/19 48/4
**right [62]** 6/9 6/13 6/18 8/20 9/7 9/12 10/9 10/23 11/4 11/16 11/23 12/5 12/13 12/17 13/1 13/18 14/2 14/11 15/8 15/11 15/14 15/16 17/1 17/8 18/22 19/21 19/23 20/4 20/7 20/8 20/21 20/21 20/24 21/1 21/22 22/14 23/24 24/9 24/23 25/8 26/3 27/14 28/6 28/9 29/19 30/14 32/2 32/16 34/2 35/5 36/16 36/18 42/15 44/10 46/21 46/25 47/9 47/20 47/24 52/19 62/12 68/24
**rights [2]** 34/23 57/17
**ripe [2]** 37/13 39/6
**ripeness [1]** 34/8
**rise [3]** 3/3 65/9 68/25
**risk [1]** 39/13
**risks [2]** 24/25 25/1
**RMR [1]** 70/16
**Robb [1]** 56/2
**role [1]** 42/21
**roles [1]** 61/3
**routinely [1]** 10/6
**rule [3]** 4/15 49/25 55/19
**run [3]** 14/16 37/6 53/11
**Russell [1]** 50/7

**S**

**sake [2]** 6/16 40/12
**salaries [1]** 53/7
**same [9]** 22/14 34/8 40/24 40/25 41/7 55/2 57/5 60/6 65/2
**sat [1]** 34/22
**satellite [1]** 20/15
**satisfied [2]** 23/11 42/23
**satisfying [2]** 23/11 65/22
**save [1]** 27/4
**saw [2]** 39/8 42/22
**saying [12]** 10/23 13/4 28/20 30/13 31/3 32/18 33/6 36/11 38/7 47/10 48/1 49/17
**scenario [1]** 8/16
**SCHELLENBERG [4]** 1/16 3/15 42/1 47/1
**scope [1]** 58/12
**seal [2]** 23/23 24/4
**seat [2]** 3/7 5/2
**sec [1]** 3/25
**second [6]** 6/4 10/22 30/10 35/15 45/22 61/8
**secondly [1]** 10/15
**Section [1]** 51/2
**see [16]** 9/21 11/19 12/25 15/12 23/9 23/20 24/14 25/2 25/12 30/8 33/21 33/21 39/22 44/10 56/22 57/11
**seeing [3]** 10/14 19/7 44/24
**seek [3]** 17/9 20/11 36/4
**seeking [3]** 12/2 43/13 55/25
**seem [3]** 30/23 46/16 49/18
**seems [6]** 9/9 10/5 16/2 41/2 42/13 49/13
**seen [2]** 42/23 48/23
**Senate [1]** 53/23
**Senate-confirmed [1]** 53/23
**Senator [5]** 29/1 30/4 30/4 30/9 42/24
**senior [1]** 51/5
**sense [3]** 13/24 46/10 49/14
**sensitive [1]** 64/13
**sent [1]** 30/13
**separating [1]** 5/11
**separation [2]** 43/1 54/18
**September [3]** 34/21 37/12 52/19
**September 6th [1]** 52/19
**sequence [1]** 28/9
**serve [2]** 7/8 36/6
**service [1]** 13/10
**services [5]** 51/13 58/2 58/12 64/6 64/8
**session [1]** 3/4
**set [8]** 8/24 12/10 12/11 18/1 18/1 18/3 25/24 68/16
**seven [1]** 19/21
**several [1]** 34/5
**shade [1]** 48/12
**shall [1]** 55/15
**share [1]** 66/4

**S**

**shift [1]** 61/19
**shore [2]** 24/2 46/1
**shored [1]** 22/18
**shot [1]** 35/18
**shout [1]** 60/5
**shout-out [1]** 60/5
**show [6]** 17/2 17/5 47/14 49/10 56/15 66/13
**showing [4]** 20/25 60/13 63/15 65/2
**shown [2]** 57/6 60/20
**shows [2]** 38/2 47/15
**shut [2]** 10/15 36/12
**shutdown [2]** 28/2 28/10
**shuttered [4]** 6/18 15/25 19/19 34/16
**shuttering [1]** 61/1
**side [1]** 46/8
**sides [2]** 49/13 49/17
**significant [3]** 48/20 60/9 61/9
**significantly [1]** 60/8
**similar [4]** 21/2 29/10 44/14 61/12
**Simon [1]** 57/17
**simple [1]** 16/12
**simply [4]** 6/7 22/11 63/13 66/11
**since [6]** 19/13 19/22 19/23 40/10 51/21 52/16
**single [1]** 59/17
**SIRKOVICH [3]** 2/2 3/20 33/25
**sit [1]** 49/22
**sitting [2]** 12/14 60/15
**situation [1]** 19/7
**six [3]** 22/1 22/12 54/24
**Sixth [1]** 67/19
**size [1]** 58/19
**skeptical [2]** 4/8 14/17
**skepticism [1]** 34/11
**skilled [1]** 50/25
**skin [1]** 18/7
**small [2]** 14/12 58/20
**so [131]**
**sole [1]** 55/9
**solely [1]** 56/14
**someday [1]** 41/15
**someone [1]** 65/22
**something [8]** 13/24 22/19 22/22 23/13 24/16 32/11 39/15 43/18
**sometime [1]** 28/10
**sometimes [1]** 50/16
**somewhat [2]** 16/23 18/19
**somewhere [3]** 29/18 32/19 62/6
**soon [1]** 38/13
**sorry [8]** 17/14 24/19 29/6 29/14 30/19 43/8 46/12 46/20
**sort [19]** 5/19 12/14 12/15 12/24 13/25 16/10 17/5 21/13 24/6 24/6 27/10 35/18 35/25 39/12 39/13 44/20 45/18 46/16 47/23
**sorts [1]** 11/15
**sought [1]** 56/25
**sound [1]** 58/19
**sounds [2]** 27/9 39/18
**source [14]** 16/1 17/7 17/12 25/15 25/18 25/18 25/20 25/21 28/18 28/20 28/24 28/25 60/25 67/5
**speak [1]** 31/5
**special [3]** 41/3 51/6 60/5
**specific [2]** 23/13 59/15
**specifically [4]** 23/18 29/1 29/24 63/9
**specificity [1]** 63/13
**speculative [4]** 16/24 17/21 65/17 66/21
**spend [3]** 52/22 52/23 63/22
**spending [1]** 24/24
**spent [1]** 31/25
**spike [3]** 59/24 60/21 61/12
**spokesman [1]** 28/13
**spokesperson [1]** 30/16
**spot [1]** 37/7
**staff [1]** 58/21
**stage [4]** 31/13 31/16 31/16 38/17
**stake [1]** 57/3
**stand [2]** 5/2 39/11
**standard [2]** 10/8 41/7
**standards [2]** 50/24 58/21
**standing [56]** 4/7 4/9 4/20 5/6 5/11 5/23 5/25 6/1 6/2 6/8 6/22 11/17 11/19 26/11 34/7 34/10 34/12 35/7 36/3 37/22 39/12 39/25 40/20 40/22 40/23 44/13 44/22 45/3 45/10 45/16 45/17 45/17 45/21 45/25 46/2 49/11 55/8 55/14 55/17 55/18 56/2 56/6 56/14 57/2 57/14 58/12 63/18 63/25 64/2 65/22 66/12 67/3 67/12 67/16 67/17 68/1
**standpoint [1]** 46/4
**stands [1]** 69/1
**start [3]** 4/5 52/17 52/19
**starting [2]** 24/13 34/10
**Stasko [1]** 62/9
**state [4]** 15/11 16/8 27/10 50/9
**stated [7]** 19/9 22/4 22/5 30/17 33/9 41/19 47/18
**statement [6]** 9/17 22/20 22/23 29/1 29/19 30/10
**STATES [8]** 1/1 1/12 3/3 55/21 56/12 67/21 70/5 70/11
**statute [9]** 5/21 28/5 32/6 33/3 42/11 42/18 46/15 47/21 55/13
**statutes [1]** 33/14
**statutorily [3]** 21/4 50/22 52/3
**statutorily-created [1]** 50/22
**statutory [5]** 31/10 35/11 40/9 51/8 54/22
**stay [3]** 4/6 5/2 26/17
**stays [1]** 42/2
**steeped [1]** 31/21
**stems [2]** 60/13 61/14
**stenographically [1]** 70/8
**stenographically-reported [1]** 70/8
**STENOTYPED [1]** 1/25
**step [3]** 26/17 42/22 43/16
**stepping [1]** 45/13
**STEVEN [2]** 1/16 3/17
**stick [2]** 25/11 25/13
**still [4]** 6/17 19/10 37/21 41/20
**stop [3]** 35/15 36/16 38/23
**stopping [1]** 44/18
**straightforward [1]** 31/1
**stream [1]** 53/11
**Street [1]** 2/3
**stretches [1]** 19/14
**structure [1]** 52/12
**struggle [2]** 14/14 38/13
**struggling [2]** 20/17 21/14
**subject [4]** 15/17 29/3 50/8 53/25
**submit [2]** 5/16 51/13
**submitted [2]** 4/2 59/5
**subsequent [3]** 5/6 48/10 48/14
**substantial [1]** 59/12
**substantially [1]** 65/23
**such [6]** 31/18 57/9 58/18 62/25 64/8 67/13
**sue [6]** 13/4 16/20 50/13 55/9 56/2 67/21
**suffer [1]** 44/14
**suffered [1]** 56/15
**suffers [1]** 34/5
**sufficiency [1]** 55/7
**sufficient [9]** 24/15 36/3 43/25 45/1 57/6 61/21 64/2 66/12 67/11
**sufficiently [1]** 65/1
**suggest [1]** 35/24
**suggests [2]** 28/22 38/21
**suit [4]** 48/8 53/12 57/4 66/5
**suits [1]** 9/22
**sum [1]** 40/5
**superintending [1]** 39/14
**Supp [2]** 64/9 67/1
**Supp. [1]** 56/9
**support [5]** 7/23 9/14 16/16 16/17 51/10
**supporting [1]** 14/22
**supports [2]** 27/18 60/12
**suppose [1]** 4/22
**supposed [1]** 25/23
**suspect [1]** 46/5
**sustained [1]** 63/16
**sweet [1]** 37/7
**system [25]** 7/12 8/18 8/22 8/25 12/3 14/4 14/5 15/11 16/16 16/17 17/25 18/4 18/5 19/6 20/24 21/25 23/5 25/16 25/25 28/14 53/18 60/13 61/13 64/14 66/23

**T**

**Tabak [1]** 67/1
**taken [8]** 17/12 21/25 38/21 53/17 57/15 58/7 58/9 63/10
**taking [2]** 20/12 53/19
**talk [11]** 13/23 24/4 26/7 27/3 27/5 27/21 27/23 30/22 35/13 39/9 41/25
**talked [3]** 10/10 19/24 41/16
**talking [14]** 7/3 8/22 11/21 11/22 17/1 17/10 17/17 20/23 23/25 24/17 24/18 25/21 29/10 47/11
**talks [1]** 33/15
**target [2]** 57/21 64/17
**task [1]** 31/20
**tell [9]** 9/15 9/25 13/12 22/10 24/11 25/1 25/12 31/20 38/15
**telling [2]** 18/25 39/4
**tend [1]** 40/2
**tenfold [1]** 60/3
**term [1]** 53/24
**terminated [1]** 54/1
**terms [9]** 4/20 7/8 9/5 10/4 12/25 16/9 31/13 33/2 45/13
**terribly [1]** 43/25
**theirs [1]** 41/6
**themselves [3]** 8/19 13/9 51/16
**theoretically [1]** 26/15
**theories [2]** 6/1 11/22
**theory [4]** 6/8 19/24 46/1 56/14
**therefore [1]** 65/20
**thereof [1]** 60/21
**they've [1]** 44/2
**thing [8]** 11/21 12/7 15/16 23/24 40/18 42/16 42/25 47/10
**things [10]** 7/10 7/24 8/21 15/1 15/8 26/8 27/20 42/13 45/7 47/4
**think [78]**
**thinking [9]** 6/15 9/25 14/20 18/19 19/15 24/10 41/7 41/10 45/6
**thinks [1]** 19/25
**third [2]** 65/14 66/5
**Thompson [1]** 56/8
**though [1]** 7/22
**thought [2]** 4/2 62/5
**thousand [1]** 15/3
**threatens [1]** 61/18
**three [14]** 6/21 9/20 12/24 19/14 25/2 36/18 40/18 43/22 45/1 45/16 50/11 54/17 58/22 59/22
**three-month [3]** 12/24 19/14 40/18
**throated [1]** 53/16
**through [18]** 7/1 30/21 34/6 34/7 40/7 49/22 50/18 51/11 51/16 51/23 52/1 53/8 54/17 59/6 61/11 61/11 62/19 64/20
**throwing [1]** 21/11
**thrust [1]** 42/4
**Thus [1]** 55/14
**tighter [2]** 65/6 67/7
**time [21]** 7/20 9/19 13/13 24/24 34/12 34/24 35/7 35/8 35/10 36/14 37/5 37/16 37/17 37/19 37/23 39/3 46/14 60/6 60/7 63/22 64/21
**times [3]** 58/6 58/23 59/5
**timing [2]** 34/5 40/15
**Timothy [1]** 58/9
**today [8]** 4/13 4/15 40/11 40/22 49/25 54/1 63/22 68/20
**together [1]** 65/9
**told [3]** 6/23 29/7 30/13
**took [2]** 49/24 52/25
**tool [3]** 19/3 19/4 19/5
**toolbox [1]** 19/4
**top [2]** 12/15 12/15
**total [4]** 15/3 48/18 56/17 59/9
**totally [2]** 23/11 39/19
**touched [1]** 41/17
**towards [5]** 25/22 34/11 43/16 46/13 49/8
**traceability [1]** 65/8
**traceable [6]** 56/18 63/19 65/12 66/2 66/11 66/24
**trained [1]** 50/25
**training [3]** 51/11 52/25 53/4
**transcript [6]** 1/11 49/23 50/5 62/7 70/7 70/9
**TRANSCRIPTION [1]** 1/25
**transfer [10]** 4/12 4/21 26/13 46/11 49/5 49/8 49/14 49/15 68/3 68/5
**transferred [3]** 26/15 26/25 55/15
**transparent [1]** 7/25
**tries [1]** 40/6
**trouble [2]** 6/21 8/10
**true [9]** 10/7 17/25 18/10 25/17 29/15 29/17 48/11 66/18 70/7
**Trump [2]** 53/16 53/22
**Trump's [1]** 53/19
**trust [6]** 12/18 60/3 60/11 66/7 66/17 66/23
**try [4]** 10/6 12/19 14/25 27/23
**trying [7]** 3/23 12/1 18/3 18/4 18/11 39/1 46/8
**turn [4]** 19/5 47/22 52/22 64/25
**Turning [1]** 57/6
**turns [1]** 59/20
**two [18]** 4/21 5/11 6/1 7/23 9/10 10/10 11/1 11/16 11/22 19/18 25/14 26/8 26/9 40/23 44/14 47/4 62/13 67/8
**type [2]** 41/3 42/24
**typical [1]** 44/5
**typically [1]** 38/25

**U**

**U.S [7]** 2/2 57/1 57/11 57/18 65/19 66/1 67/18
**U.S. [1]** 56/23
**U.S.C [7]** 51/2 51/8 52/5 55/13 67/24 68/4 70/6
**Uh [1]** 6/20
**Uh-huh [1]** 6/20
**Ulander [1]** 3/8
**ultimate [1]** 43/16
**ultra [10]** 31/2 31/5 31/9 31/17 31/18 32/7 32/9 33/11 33/13 54/24
**unable [1]** 44/15
**unconstitutional [2]** 55/2 55/4
**under [11]** 6/2 6/22 17/4 17/6 23/23 24/4 40/7 42/17 52/13 52/22 55/20
**undermines [2]** 44/22 64/23
**understand [12]** 11/2 11/24 13/14 19/1 21/15 24/12 24/20 31/3 37/4 38/20 48/25 61/16
**understanding [1]** 57/20
**Understood [1]** 30/18
**unease [1]** 44/19
**unfettered [2]** 29/11 66/8
**unilateral [2]** 33/15 54/14
**union [2]** 21/10 55/23
**UNITED [8]** 1/1 1/12 3/3 55/21 56/12 67/21 70/5 70/11
**unlawful [2]** 18/5 65/21
**unlawfully [1]** 51/19
**unleashed [1]** 53/16
**unless [1]** 49/24
**until [5]** 27/4 47/19 48/2 48/2 50/20
**unusual [2]** 31/19 52/3
**up [13]** 8/24 12/11 18/1 18/1 18/3 22/18 24/2 25/24 29/15 31/25 46/1 48/2 48/2
**upon [1]** 39/18
**urge [1]** 54/19
**urges [1]** 54/19
**use [17]** 10/16 10/16 10/18 11/24 12/2 12/5 13/18 13/19 13/25 14/1 14/10 18/21 22/6 31/4 42/7 52/14 54/20
**used [7]** 11/3 23/1 25/9 43/24 44/2 52/10 54/21
**uses [3]** 14/6 21/9 62/17
**using [7]** 9/10 18/16 21/7 31/20 59/11 63/4 64/14

**V**

**vacate [3]** 17/13 17/14 17/14
**vagaries [1]** 28/6
**vague [1]** 44/20
**validity [1]** 9/17
**variety [1]** 11/13
**various [2]** 22/25 30/22
**venue [10]** 46/6 46/15 50/8 55/7 55/9 55/12 55/14 67/17 67/22 68/2
**versus [1]** 3/11
**very [20]** 5/1 8/1 8/4 9/5 13/11 13/11 14/12 19/9 21/2 21/5 21/14 22/8 29/9 29/9 36/14 42/13 48/5 49/2 68/13 68/13
**via [2]** 63/5 63/19
**viability [1]** 64/25
**viable [2]** 19/10 20/1
**VICKERY [2]** 1/17 3/19
**victim [1]** 9/8
**view [6]** 5/9 33/11 40/14 41/24 64/18 65/6
**viewed [1]** 56/7
**viewpoint [1]** 43/2
**views [1]** 4/17
**violate [1]** 5/21
**violates [1]** 54/16
**violation [2]** 31/14 55/3
**violations [1]** 31/1
**vires [9]** 31/2 31/5 31/9 31/18 32/7 32/9 33/11 33/13 54/24
**visits [3]** 57/8 59/20 61/7
**voluntary [3]** 39/1 46/12 46/19
**Vought [1]** 50/14
**Vought's [1]** 50/7
**vs [1]** 1/7
**Vuyyuru [1]** 55/21

**W**


**waited [1]** 35/3
**waiting [2]** 39/12 39/14
**waiver [1]** 24/8
**walk [1]** 7/1
**walked [1]** 47/24
**walling [1]** 24/6
**want [28]** 4/16 11/1 13/4 14/16 21/19 23/14 23/25 26/6 26/8 26/10 26/11 26/13 26/21 27/3 27/4 27/4 28/19 29/17 31/5 38/22 40/14 40/19 43/16 45/13 47/4 47/5 49/23 68/11
**wants [4]** 5/15 30/21 31/7 35/20
**warranted [1]** 46/19
**was [72]**
**Washington [3]** 1/18 1/21 2/3
**wasn't [4]** 28/1 28/2 35/25 39/3
**waste [2]** 51/14 54/10
**watchdog [4]** 13/5 16/16 16/16 16/17
**way [24]** 4/8 6/15 12/12 12/25 16/12 17/20 18/23 22/11 23/6 25/1 25/24 28/4 28/6 31/14 35/20 38/12 43/18 45/5 45/23 49/19 49/24 57/2 63/9 68/15
**ways [2]** 12/4 49/15
**we'll [3]** 33/21 68/15 68/15
**website [15]** 9/11 11/3 11/6 13/23 13/24 43/23 44/2 51/13 58/23 62/19 62/21 63/5 63/6 63/9 63/12
**website's [1]** 53/1
**websites [7]** 10/24 11/1 14/3 25/4 25/5 35/12 62/13
**WEDNESDAY [1]** 1/12
**week [1]** 53/19
**weeks [1]** 32/1
**Welfare [1]** 57/17
**well [36]** 5/1 8/20 9/8 13/21 14/2 15/5 17/4 19/12 20/19 21/6 23/6 23/24 26/7 33/12 36/5 36/11 36/23 37/24 38/2 39/19 39/20 39/24 42/7 44/6 44/22 48/23 50/25 51/5 55/12 55/22 56/4 56/8 62/17 63/3 67/5 68/13
**well-done [1]** 68/13
**well-trained [1]** 50/25
**WENTWORTH [2]** 1/20 3/18
**West [1]** 9/21
**whatever [6]** 5/2 21/9 22/13 27/4 42/23 44/8
**Whenever [1]** 5/1
**wherever [2]** 34/2 45/19
**whether [22]** 6/16 15/9 15/10 21/9 24/5 26/10 31/13 33/2 34/6 34/7 40/4 40/4 40/8 42/10 43/2 55/8 56/10 57/3 57/6 57/19 67/12 68/5
**while [8]** 13/10 38/4 48/1 58/18 58/20 61/16 66/15 67/13
**whistleblower [9]** 11/4 14/23 15/2 58/15 59/10 61/9 61/10 62/3 62/16
**whistleblowers [11]** 7/11 8/2 8/13 10/17 13/8 14/23 15/17 54/9 58/4 58/7 58/11
**whistleblowing [1]** 41/4
**Whitehouse [8]** 11/18 13/21 23/13 41/23 43/6 43/19 58/10 60/18
**Whitehouse's [3]** 6/23 54/6 54/12
**whole [4]** 10/21 11/15 35/3 47/10
**whom [2]** 8/2 8/6
**whose [4]** 50/22 57/23 66/9 67/11
**wide [2]** 51/4 58/2
**wise [1]** 49/18
**wish [2]** 68/12 68/14
**within [6]** 7/12 11/14 14/5 17/25 51/14 53/19
**without [16]** 4/11 22/9 26/12 28/23 45/25 46/12 46/13 46/20 49/6 49/7 49/9 55/5 67/10 68/6 68/8 68/17
**wondering [1]** 28/18
**word [3]** 31/22 47/2 64/24
**words [3]** 16/15 31/21 42/4
**work [7]** 3/24 3/25 8/6 15/12 15/16 15/21 22/13
**worked [1]** 42/7
**Workers [1]** 55/23
**workforce [1]** 51/1
**working [2]** 15/9 42/6
**workload [1]** 60/7
**works [3]** 7/10 7/12 14/5
**worth [2]** 43/2 65/4
**wouldn't [2]** 15/12 45/17
**wrong [4]** 31/20 38/9 39/15 47/12
**wrongdoer [2]** 8/17 20/11
**wrongdoing [3]** 17/7 64/17 65/6
**wrote [1]** 59/18


**X**


**XINIS [2]** 1/11 3/5


**Y**


**yeah [14]** 5/9 15/19 16/13 19/18 20/4 21/21 23/18 26/5 29/23 30/20 31/9 31/22 44/23 49/12
**year [18]** 8/1 19/12 32/15 32/15 32/20 32/21 32/22 35/23 40/5 48/18 51/21 51/23 52/10 52/11 52/17 52/18 58/18 60/8
**yearly [1]** 52/17
**years [12]** 8/14 13/12 15/1 18/14 18/17 18/18 25/9 58/14 59/10 59/17 60/10 63/1
**yep [1]** 11/7
**yes [18]** 6/10 6/14 6/14 7/2 11/5 11/12 24/4 24/7 29/25 30/12 32/12 32/17 33/18 33/20 36/1 36/21 42/11 43/25
**yet [4]** 38/1 41/20 41/25 42/1
**yourselves [1]** 3/14


**Z**


**zero [4]** 16/22 32/9 32/10 51/20